**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| AUTUMN DRAYTON, as Personal Representative and Successor in Interest of the ESTATE OF NIKO ESTEP,<br><br>*Plaintiff,*<br><br>v.<br><br>DISTRICT OF COLUMBIA, *et al.*,<br><br>*Defendants*. | Civil Action No. 24-03023 (RBW) |

<u>**DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**</u>

## TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................1

ARGUMENT.................................................................................................................1

I.      Plaintiff Improperly Modifies Her Complaint in Her Opposition Brief............................1

II.     Plaintiff Does Not Overcome Defendants' Assertion of Qualified Immunity...................3

    A.  Count I: Unreasonable Seizure (42 U.S.C. § 1983)............................................3

    B.  Count II: Excessive Force (42 U.S.C. § 1983) ....................................................6

III.    Plaintiff's Overly Broad Interpretation of Joint and Several Liability is Untenable.........10

IV.    Plaintiff's Bystander Liability Claims Are Disjointed, Largely Improper, and Entirely Repetitive of the Joint and Several Liability Assertions. ................................................13

V.     Plaintiff's Authorities in Support of Her Intentional Infliction of Emotional Distress Argument Are Unavailing on Extreme and Outrageous Conduct...................................15

VI.    Plaintiff Does Not Plausibly Allege Basis for § 1983 Municipal Liability for Widespread Practice or Custom, Plus Deliberate Indifference Thereto. .............................................16

CONCLUSION...............................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

*Amons v. District of Columbia*, 231 F.Supp.2d 109 (D.D.C. 2002) ...........................................15

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)...................................................................................3

*Bah v. District of Columbia*, Case No. 23-cv-1248 (JDB), 2024 WL 983329 (D.D.C. Mar. 7, 2024).........................................................................................................................................17

*Barham v. Ramsey*, 338 F.Supp.2d 48 (D.D.C. 2004) ................................................................8

*Bernier v. Allen*, Case No. 16-cv-00828 (APM), 2019 WL 11320973 (D.D.C. Aug. 22, 2019)....4

*C.B. v. City of Sonora*, 769 F.3d 1005 (9th Cir. 2014) ............................................................10

*Connick v. Thompson*, 563 U.S. 51 (2011)................................................................................18

*Cotton v. District of Columbia*, 541 F.Supp.2d 195 (D.D.C. 2008) ...........................................8

*Daniels v. District of Columbia*, 894 F.Supp.2d 61 (D.D.C. 2012)...........................................15

*DeGraff v. District of Columbia*, 120 F.3d 298 (D.C. Cir. 1997)................................................7

*District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332 (D.C. 1998) ...............................11

*Drejza v. Vaccaro*, 650 A.2d 1308 (D.C. 1994) ................................................................15, 16

*Dukore v. District of Columbia*, 799 F.3d 1137 (D.C. Cir. 2015)...............................................4

*Early Settlers Ins. Co. v. Schweid*, 221 A.2d 920 (D.C. 1966)..................................................11

*Enders v. District of Columbia*, 4 A.3d 457 (D.C. 2010)..........................................................12

*Etheredge v. District of Columbia*, 635 A.2d 908 (D.C. 1993)..................................................11

*Figueroa v. Santa Rosa Cnty. Sheriff's Dep't*, 721 F.Supp.3d 1289 (N.D. Fla. 2024).........5, 9, 10

*Graham v. Connor*, 490 U.S. 386 (1989).................................................................................5, 6

*Groh v. Ramirez*, 540 U.S. 551 (2004) .......................................................................................8

*Illinois v. Wardlow*, 528 U.S. 119 (2000) ...................................................................................5

*In re C.L.D.*, 739 A.2d 353 (D.C. 1999) .....................................................................................5

*Jackson v. District of Columbia*, 327 F.Supp.3d 52 (D.D.C. 2018) .....................................13, 14

*James v. United States*, 48 F.Supp.3d 58 (D.D.C. 2014) ...........................................................14

*Johnson v. District of Columbia*, 528 F.3d 969 (D.C. Cir. 2008)................................................6

*Lin v. District of Columbia*, Case No. 20-7111, 2022 WL 4007900 (D.C. Cir. Sept. 2, 2022) ......7

*Liser v. Smith*, 254 F.Supp.2d 89 (D.D.C. 2003)......................................................................15

*Martin v. Malhoyt*, 830 F.2d 237 (D.C. Cir. 1987)....................................................................6

*McManus v. District of Columbia*, 530 F.Supp.2d 46 (D.D.C. 2007) ..........................................1

*Mitchell v. Forsyth*, 472 U.S. 511 (1985)...............................................................................3, 4

*Nat'l Health Lab'ys, Inc. v. Ahmadi*, 596 A.2d 555 (D.C. 1991)................................................11

*Patrick v. District of Columbia*, 179 F.Supp.3d 82 (D.D.C. 2016) .............................................1

*Pearson v. Callahan*, 555 U.S. 223 (2009) .................................................................................4

*Posey v. United States*, 201 A.3d 1198 (D.C. 2019)...................................................................4

*Qutb v. Ramsey*, 285 F.Supp.2d 33 (D.D.C. 2003) .....................................................................8

*Saucier v. Katz*, 533 U.S. 194 (2001).........................................................................................6

*Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996).................................................12

*Shea v. Porter*, 56 F.Supp.3d 65 (D. Mass. 2014) ....................................................................9

*Tarver v. City of Edna*, 410 F.3d 745 (5th Cir. 2005).............................................................8, 9

*Tillman v. Washington Metro. Area Transit Auth.*, 695 A.2d 94 (D.C. 1997)...............................8

*Turpin v. Ray*, 319 F.Supp.3d 191 (D.D.C. 2018).....................................................................4

*Tyson v. District of Columbia*, Case No. 20-cv-1450, 2021 WL 4860685 (D.D.C. Oct. 19, 2021) ....................................................................................................................................17, 18

*U.S. v. Dykes*, 406 F.3d 717 (D.C. Cir. 2005) ...........................................................................7

*Warren v. District of Columbia*, 353 F.3d 36 (D.C. Cir. 2004)................................................18
*Wilkins v. Gaddy*, 559 U.S. 34 (2010)...............................................................................8
*Williams v. District of Columbia*, 268 F.Supp.3d 178 (D.D.C. 2017)...............................7
*Xingru Lin v. District of Columbia*, 268 F.Supp.3d 91 (D.D.C. 2017).........................15

**Statutes**
42 U.S.C. § 1983.....................................................................................................passim

**Other Authorities**
*Stop Data*, METRO. POLICE DEP'T, *available at* https://mpdc.dc.gov/stopdata (last visited Mar.
    11, 2025)..........................................................................................................17

**Rules**
Fed. R. Civ. P. 15..................................................................................................2

**Treatises**
32 Am.Jur.2d *False Imprisonment* § 7 (2007)...........................................................12

## INTRODUCTION

Plaintiff's opposition to Defendants' motion cannot overcome many deficiencies. First, Plaintiff's constitutional claims against the Individual Defendants (Counts I and II) overestimate the strength of the allegations and understate the breadth of the doctrine of qualified immunity. Second, with respect to Plaintiff's common law false arrest and battery claims (Counts IV and V), in addition to arguments already asserted, Plaintiff makes no attempt to distinguish claims for the different officers and continues to paint them with the same broad brush. The difficult-to-follow assertions of joint and several liability, plus bystander liability, are untenable. Third, Plaintiff simply has not plausibly alleged extreme and outrageousness to sustain the intentional infliction of emotional distress claim (Count VI). Finally, even at the pre-discovery, motion-to-dismiss stage, Plaintiff similarly falls short on *Monell* municipal liability (Count III). Plaintiff fails to show a widespread practice of constitutional violations by MPD—here, alleged as the unlawful detention and/or handcuffing of children—or deliberate indifference thereto.

## ARGUMENT

### I.   Plaintiff Improperly Modifies Her Complaint in Her Opposition Brief.

In an effort to highlight the purported egregiousness of Defendants' conduct, Plaintiff reorders the allegations of her Complaint, or adds new facts entirely, in her opposition brief, an improper means by which to amend. "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *McManus v. District of Columbia*, 530 F.Supp.2d 46, 74 n.25 (D.D.C. 2007) (citations and internal quotation marks omitted). *See also Patrick v. District of Columbia*, 179 F.Supp.3d 82, 89 (D.D.C. 2016) ("[A] complaint may not be amended by a brief in opposition to a motion to dismiss" (disregarding anecdotal evidence of

police brutality in opposition to District's motion to dismiss, not in amended complaint)). Fed. R. Civ. P. 15 governs the circumstances under which a pleading may be amended and how.

Plaintiff alleges the following sequence of events in her Complaint: that the minor child, Niko Estep, was leaning against a parked car when two Metropolitan Police Department (MPD) officers, Defendants Joseph Lopez and Wilfredo Flete-Sosa, approached and told him to not lean against the car, Pl.'s Compl. ¶ 14; that Mr. Estep made a "disrespectful comment" to Officers Lopez and Flete-Sosa prior to running away, *id.* ¶ 15; that Officer Lopez chased Mr. Estep through the street and around several cars, eventually catching him, grabbing the back of his jacket, and jerking him backward, causing Mr. Estep to fall, *id.*; that Officer Lopez held Mr. Estep and moved him out of the road to the sidewalk, *id.*; that Officer Lopez then handcuffed Mr. Estep, *id.* ¶ 16; that while Mr. Estep was handcuffed, two other MPD officers, Defendants Marshond Matory and Daniel Styles, arrived on the scene, *id.* ¶ 22; that while Mr. Estep was handcuffed, Officer Lopez mocked him by saying he should "act" a big game if he intended to talk one, *id.* ¶ 24; that at some point during the incident, Mr. Estep wet himself, *id.* ¶ 18; and a crowd of bystanders had gathered, Mr. Estep's handcuffs were removed, and he was permitted to stand with the bystanders prior to being released to his mother, *see id.* ¶¶ 21, 27–28. Plaintiff does not specifically allege any duration for the underlying events other than to say Mr. Estep was "detained in handcuffs for an extended period." *Id.* ¶¶ 1, 22.

Plaintiff's opposition contradicts itself and the Complaint, muddies the sequence of events, and introduces new allegations. *One*, Plaintiff argues "[t]he duration of the detention . . . exceeded the amount of time necessary to dispel any supposed suspicion," *see* Pl.'s Opp'n to Defs.' Mot. to Dismiss (Pl.'s Opp'n), ECF No. 23, at 9–10, and that the officers "held Niko for a prolonged period," *see id.* at 10, but also that Mr. Estep "spent **most** of the incident running

away" from Officer Lopez, *see id.* at 9 (emphasis added), which indicates the period Mr. Estep was held was short or he ran from police for a very long time. Plaintiff seeks to capitalize on her deliberate imprecision—to not place a duration on the period Mr. Estep was handcuffed—to bolster her argument any seizure was unreasonable, *see id.* at 12–13, and also underscore her theme that the officers were bad actors, *see generally id. Two*, Plaintiff alleges generally that Mr. Estep "wet himself during the Incident," *see* Pl.'s Compl. ¶ 18, but here Plaintiff presents that Mr. Estep wet himself before he was purportedly taunted by Officer Lopez, *see* Pl.'s Opp'n at 30, in an effort to portray Officer Lopez's conduct as more extreme and outrageous than initially pleaded. *Three*, Plaintiff alleges that Mr. Estep's "older cousins" were present while he was leaning against the car, *see* Pl.'s Opp'n at 2, a fact not pled in the Complaint. *Four*, Plaintiff twice maintains that the crowd of bystanders included members of Mr. Estep's family (prior to Mr. Estep's mother arriving at the scene), *see id.* at 3, 10, to whom the police would not release Mr. Estep, which is not represented in the Complaint. In fact, Plaintiff alleges Mr. Estep stood with bystanders after the handcuffs were removed. Pl.'s Compl. ¶ 27.

## II.    Plaintiff Does Not Overcome Defendants' Assertion of Qualified Immunity.

### A.    Count I: Unreasonable Seizure (42 U.S.C. § 1983)

In racing to proclaim Defendants "concede" certain points, such as that Plaintiff states a false arrest claim, *see* Pl.'s Opp'n at 7–8, or that Defendants lacked probable cause to arrest Mr. Estep, *see id.* at 7, 10, Plaintiff ignores the breadth of qualified immunity—"an *immunity from suit* rather than a mere defense to liability," *see Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("When properly applied, [qualified immunity] protects all but the plainly incompetent or those who knowingly violate the law" (citation and internal quotation marks omitted))—and courts' preference it be

asserted early on in cases. *See generally* Defs.' Mot. to Dismiss (Defs.' MTD), ECF No. 22–1, at 5–7. Though Plaintiff asserts Defendants' qualified immunity argument is "meritless" "at this early stage of litigation," *see* Pl.'s Opp'n at 7, "[t]he Supreme Court has identified a clear mandate for courts to resolve qualified immunity questions at the earliest possible stage of litigation[.]" *Turpin v. Ray*, 319 F.Supp.3d 191, 196 (D.D.C. 2018) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). *See also Bernier v. Allen*, Case No. 16-cv-00828 (APM), 2019 WL 11320973, at *2 (D.D.C. Aug. 22, 2019) ("At the motion-to-dismiss stage, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal'" (quoting *Mitchell*, 472 U.S. at 526)).

The Individual Defendants' conduct was not in violation of any clearly established law. "If the right in question was not clearly established, we need not broach the question of whether a constitutional violation occurred because the officers are entitled to qualified immunity regardless." *Dukore v. District of Columbia*, 799 F.3d 1137, 1144 (D.C. Cir. 2015) (citing *Pearson*, 555 U.S. at 236). Plaintiff argues Mr. Estep held a clearly established right to not be seized because he "had done nothing suggestive of criminal behavior," *see* Pl.'s Opp'n at 13, and that it was "clear at the time" that "Niko had not committed any offense under D.C. law," *see id.* at 14. Ignoring the seizure for a moment, the facts here are not analogous to the cases on which Plaintiff relies. In *Posey v. United States*, 201 A.3d 1198 (D.C. 2019), before the court on review of a motion to suppress, it held "simply that a nondescript individual distinguishing himself from an equally nondescript crowd by running away from officers unprovoked" does not subject the person to a search. *Id.* at 1201, 1204. Here, Plaintiff alleges the officers approached Mr. Estep, asking him to not lean against an unknown person's car, Mr. Estep "made a disrespectful comment" to them, and led them on a lengthy foot chase. *See* Pl.'s Compl. ¶¶ 14–15. *See also*

4

Pl.'s Opp'n at 9 (recalling Mr. Estep "spent most of the incident running away" from police). Mr. Estep did not simply back off the car, stand silent, or walk off; unlike *In re C.L.D.*, 739 A.2d 353 (D.C. 1999)—where, upon confrontation with police, the appellant refused to identify himself, stated an intention to leave, and walked off, *id.* at 354—Mr. Estep led Officer Lopez on a chase "through the street and around several cars," Pl.'s Compl. ¶ 15. "Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Plaintiff omits from her Complaint at least one consideration of the lawfulness of the stop: the nature of the "disrespectful comment." Pl.'s Compl. ¶ 15. Comments may range from benign to unlawful threats. Plaintiff attempts to paint the comment as rude, claiming he had "done nothing suggestive of criminal behavior[,]" *see* Pl.'s Opp'n at 13, but Plaintiff has not alleged *facts* here, just her own conclusion. Absent this information, the Court cannot distinguish if Mr. Estep was being "combative, threatening, or aggressive" at the outset of the interaction. *See Figueroa v. Santa Rosa Cnty. Sheriff's Dep't*, 721 F.Supp.3d 1289, 1300 (N.D. Fla. 2024).

As to the alleged constitutional violation, the unreasonable seizure, whether the facts dictate a determination of an arrest or *Terry* stop, the officers' "right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). *See also* Defs.' MTD at 7–8 (discussing relevant case law). Plaintiff argues the underlying events were "entirely lacking in justification and unreasonable in scope," Pl.'s Opp'n at 9, and solely intended "as a display of dominance[] and in retaliation for Officer Lopez having felt disrespected[,]" *id.*, which is conclusory in nature. Separately, in arguing the unreasonableness of the incident, Plaintiff doubles down on her assertion Mr. Estep was held for a "prolonged period," *see* Pl.'s Opp'n at

10, offering little more than labels and conclusions, *see* Defs.' MTD at 9, and contradicting herself in that Mr. Estep "spent most of the incident running away[,]" *see* Pl.'s Opp'n at 9.

    **B.**    <u>Count II: Excessive Force (42 U.S.C. § 1983)</u>

    Assessing the allegations "in full context," *see* Pl.'s Opp'n at 20, Plaintiff is unable to overcome the two-part qualified immunity analysis set forth in *Saucier v. Katz*, 533 U.S. 194 (2001), on her § 1983 excessive force claim. "An officer's act of violence violates the Fourth Amendment's prohibition against unreasonable seizures if it furthers no governmental interest, such as apprehending a suspect or protecting an officer or the public." *Johnson v. District of Columbia*, 528 F.3d 969, 976 (D.C. Cir. 2008). Plaintiff relies repeatedly on *Johnson*, *see* Pl.'s Opp'n at 18–24, a case that involves a gratuitous use of force against a third-party, an off-duty police officer who—despite bearing an MPD identification badge around his neck—was subjected by police to repeated kicks and stomps while lying prone on an apartment floor. *See* 528 F.3d at 971–72. Any review of the reasonableness of an officer's use of force "accords a measure of respect to the officer's judgment about the quantum of force called for in a quickly developing situation." *Martin v. Malhoyt*, 830 F.2d 237, 261 (D.C. Cir. 1987) (footnote omitted). *See also Graham*, 490 U.S. at 396 ("The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight"); Defs.' MTD at 12–13 (citing and further discussing same).

    Plaintiff argues it is "clearly established" that once officers have someone "fully under their control," they may not use additional force, "as Defendants did here by prolonging Niko's detention in handcuffs," *see* Pl.'s Opp'n at 24, which is a mischaracterization of the facts made possible by an ambiguously phrased complaint. To start, Plaintiff alleges Officer Lopez placed Mr. Estep in handcuffs after he ran away, *see* Pl.'s Compl. ¶¶ 15–16, and the handcuffs were

thereafter removed, *see id.* ¶ 27. Plaintiff pleads any temporal element with zero specificity, other than to say the interaction was "prolonged," *see id.* ¶¶ 55, 67, and "extended," *see id.* ¶¶ 1, 22, 53, 92. Plaintiff cites to *DeGraff v. District of Columbia*, 120 F.3d 298 (D.C. Cir. 1997), in support of their excessive force argument, *see* Pl.'s Opp'n at 24; in *DeGraff*, Plaintiff told police after the officers observed a near-miss motor vehicle accident and smelled alcohol in the vehicle that she had consumed "some wine," at which point they forcibly removed her from the vehicle, called her a "drunk" and "murderer," and carried her horizontally to an unknown destination despite no difficulty standing on her own two feet. *See* 120 F.3d at 300. In *Williams v. District of Columbia*, 268 F.Supp.3d 178 (D.D.C. 2017), another case relied upon by Plaintiff, the force employed by officers came *after* the plaintiff was subdued. *Id.* at 190. Plaintiff does not allege any force applied to Mr. Estep after he was handcuffed, other than—interpreting the Complaint most liberally—the reapplication of handcuffs after they slipped off. *See* Pl.'s Compl. ¶ 20.

Plaintiff needlessly explores Circuit Court decisions across the country, *see* Pl.'s Opp'n at 23–24, in support of the assertion that "significant force against an individual who poses no threat and has committed no serious crime" runs afoul of the Fourth Amendment, *see id.* at 23, ignoring she does not allege "significant force." To the extent Plaintiff alleges *any* force, it was that Officer Lopez, one of four Individual Defendants, ran down a fleeing Mr. Estep after a chase and briefly placed him in handcuffs. *See* Pl.'s Compl. ¶¶ 15–16, 27. Courts in the District have held the use of handcuffs does not necessarily constitute an excessive use of force. *See, e.g.*, *Lin v. District of Columbia*, Case No. 20-7111, 2022 WL 4007900, at *13 (D.C. Cir. Sept. 2, 2022) (affirming lower court's determination of no excessive force where appellant was scratched across face and handcuffed, hospitalized, prescribed painkillers, and received no other treatment); *U.S. v. Dykes*, 406 F.3d 717, 720 (D.C. Cir. 2005) (holding not excessive force

where, during investigatory stop, officers tackled appellant who was in flight and handcuffed him); *Cotton v. District of Columbia*, 541 F.Supp.2d 195, 204–05 (D.D.C. 2008) (holding qualified immunity proper on excessive force claim arising out of *Terry* stop where the plaintiff was forced to ground and handcuffed); *Barham v. Ramsey*, 338 F.Supp.2d 48, 67 (D.D.C. 2004) (in finding use of flexi-cuffs during arrest, without more, not a constitutional violation, acknowledging "lack of clearly established law in this Circuit or other circuits . . . [from which] it would 'be clear to a reasonable officer that his conduct was unlawful in the situation he confronted'" (quoting *Groh v. Ramirez*, 540 U.S. 551, 563 (2004))); *Tillman v. Washington Metro. Area Transit Auth.*, 695 A.2d 94, 97 (D.C. 1997) (affirming judgment of no excessive force where appellant complained handcuffs were too tight and the officers would tighten handcuffs more whenever the appellant complained thereof).

Unable to plausibly allege significant force, Plaintiff—relying again on out-of-circuit case law—connects Mr. Estep's alleged psychological injury to the excessive force claim, *see* Pl.'s Opp'n at 21, which fails because Plaintiff has not presented more than "de minimis" physical injury. *See Tarver v. City of Edna*, 410 F.3d 745, 751–52 (5th Cir. 2005) (holding acute wrist contusions, which the Court classified as "de minimis," and psychological injury from being handcuffed not excessive force). "[W]hile neither the D.C. Circuit nor the Supreme Court has expressly embraced a de minimis force rule in the context of Fourth Amendment excessive force claims, other courts have." *Qutb v. Ramsey*, 285 F.Supp.2d 33, 49 (D.D.C. 2003) (footnote omitted). *See also Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (recognizing, for comparison, Eighth Amendment's prohibition of cruel and unusual punishment "necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind" (citation and internal quotation marks

omitted)). In *Shea v. Porter*, 56 F.Supp.3d 65 (D. Mass. 2014), the Court enumerated examples of physical force commonly associated with excessive force by police: a punch or beating, striking with a baton, or shooting. *See id.* at 88. Those allegations are not present here. *See generally* Pl.'s Compl. Even if the Court were to accept that psychological injury can serve as a basis for § 1983 liability on excessive force, Plaintiff does not allege surrounding circumstances to warrant her claim being sustained. Plaintiff alleges Mr. Estep was treated for contusions on the foot and arm, a knot on his forehead, and abrasions on his back and around the wrists. *Id.* ¶ 29. Plaintiff does not allege any permanence as to the physical injuries, *see generally id.*, which are not more than de minimis. Finally, to the extent Plaintiff argues the officers lacked probable cause or reasonable suspicion to arrest or detain Mr. Estep, *see, e.g.*, Pl.'s Opp'n at 24 (". . . Niko had done nothing more than lean against a car, utter a disrespectful remark, and run away"), that "goes to [Plaintiff's] unlawful arrest claim," not excessive force. *See Tarver*, 410 F.3d at 751–52.

Plaintiff also makes no meaningful attempt to distinguish the force used by the three officers other than Officer Lopez. Plaintiff lumps them together and alleges the "force" used by all three was the "chase, tackling, initial handcuffing, and/or prolonged detention." Pl.'s Opp'n at 22. But only the "prolonged detention" could plausibly apply to Officers Matory and Styles, who arrived on the scene after the alleged chase and tackling had already taken place, and, at earliest, as Mr. Estep was handcuffed. Pl.'s Compl. ¶¶ 22, 55, 67. This argument is not supported by a well-pleaded complaint because Plaintiff does not plead the duration of any detention. And as discussed below, Plaintiff's citations in support of her argument do not further her cause.

For one, the facts in *Figueroa* are not sufficiently analogous. *See generally* 721 F.Supp.3d 1289. *Figueroa* took place in a school setting, and the child "did not attempt to run away" and merely "wriggl[ed] free" in response to the handcuffs causing severe pain. *Id.* at

1305. Furthermore, the force used in *Figueroa* stands in stark contrast to what allegedly occurred here: *Figueroa* involved "pinning an unarmed, mentally disabled, ninety pound second-grader to the ground, tightening the handcuffs until the child loses circulation, and then carrying the child outside by his armpits to sit in the back of a police cruiser for nearly an hour, coupled with shaking that child by his shoulder when he cries . . . ." *Id.* at 1306. Here, Plaintiff omits duration altogether, not alleging Mr. Estep was handcuffed for an hour or for a minute.

Second, *C.B. v. City of Sonora*, 769 F.3d 1005 (9th Cir. 2014), is inapposite. There, both individual defendants played an active role in the handcuffing of the plaintiff: one advised the other to do so and he did. *Id.* at 1011. Here, Plaintiff argues that officers arriving on scene after, or who did not take an active role in, handcuffing Mr. Estep are nonetheless equally responsible and used "force" because they were "part of that." *See* Pl.'s Opp'n at 22. Plaintiff's attempt to hold Officers Matory, Styles, and Flete-Sosa responsible for the alleged force used by Officer Lopez should be soundly rejected (*see infra* for further discussion of bystander liability).

### III.    __Plaintiff's Overly Broad Interpretation of Joint and Several Liability is Untenable.__

Though she backs off her allegations of joint and several liability as to the non-Officer Lopez Individual Defendants on the § 1983 claims, *compare* Pl.'s Compl. ¶ 60 (unreasonable seizure) and ¶ 70 (excessive force) *with* Pl.'s Opp'n (only discussing joint and several liability with respect to common law claims of false arrest and battery), Plaintiff argues the Individual Defendants—to include Officers Matory and Styles, who were called to the scene and performed crowd control, *see* Pl.'s Compl. ¶ 22—"played an active role" and "affirmatively aided" Mr. Estep's detention. *See* Pl.'s Opp'n at 16–17, 26. Plaintiff faults the Individual Defendants for not showing up on the scene, conducting an immediate and full investigation of events, obtaining Plaintiff's desired result, and undermining their fellow officer. *See id.* at 17. To aid in this

argument, Plaintiff again tinkers with the allegations in her Complaint. Plaintiff asserts Officers

Matory and Styles "stood by as Defendant Lopez mocked Niko for crying[,]" *see* Pl.'s Opp'n at

17, which she previously—and generally—alleged occurred "[a]t one point while Niko was

handcuffed and crying," *see* Pl.'s Compl. ¶ 24, leaving it unclear if they had arrived.

Nevertheless, to be joint tortfeasors, the parties must, as the name suggests, be

tortfeasors. *See District of Columbia v. Washington Hosp. Ctr.*, 722 A.2d 332, 336 (D.C. 1998)

("An essential prerequisite for entitlement to contribution is that the parties be joint tortfeasors in

the sense that their negligence concurred in causing the harm to the injured party" (footnote

omitted)); *Nat'l Health Lab'ys, Inc. v. Ahmadi*, 596 A.2d 555, 557 (D.C. 1991) ("[O]rdinarily,

when two tortfeasors jointly contribute to harm to a plaintiff, both are potentially liable to the

injured party for the entire harm"). Plaintiff does not allege the non-Officer Lopez Individual

Defendants were negligent and that their active negligence concurred in causing the injury to Mr.

Estep, *see Early Settlers Ins. Co. v. Schweid*, 221 A.2d 920, 923 (D.C. 1966), but rather that they

"played an active role" in the offense of false arrest, *see* Pl.'s Opp'n at 17, and that "all three

participated in the initial arrest *and/or* detention in handcuffs," *see* Pl.'s Opp'n at 26 (emphasis

added), on the battery claim.

Starting with the battery charge, a battery is an intentional act that causes a harmful or

offensive bodily contact. *Etheredge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993).

Plaintiff alleges battery based entirely on Officer Lopez's conduct, *see* Pl.'s Compl. ¶ 85

(detailing sequence following Mr. Estep leading Officer Lopez on chase and ending with Mr.

Estep in handcuffs, applied by Officer Lopez); she alleges Officers Matory and Styles were not

present until Mr. Estep was handcuffed, *see id.* ¶ 22, and only alleges Officer Flete-Sosa "nudged

Niko along with his hand[,]" *id.* ¶ 15, as Officer Lopez escorted Mr. Estep off the street. These

11

Individual Defendants did not jointly contribute to any harm to Mr. Estep. Plaintiff acknowledges two of the three were not even present until Mr. Estep was handcuffed, and further does not allege they made *any* physical contact with Mr. Estep. *See generally id.* Plaintiff cannot gloss over the allegations of the Complaint with an "and/or" conjunction to cover her bases.

Moving to false arrest, a viable claim requires an unlawful detention. *Enders v. District of Columbia*, 4 A.3d 457, 461 (D.C. 2010). *See also* 32 Am.Jur.2d *False Imprisonment* § 7 (2007) (providing essential elements of claim are (1) detention or restraint of one against his or her will, and (2) that the detention or restraint was unlawful). Plaintiff alleges the non-Officer Lopez Individual Defendants "actively participated in the contact with Niko[,]" *see* Pl.'s Compl. ¶ 81, but does not plausibly allege how they acted in concert with Officer Lopez to commit the false arrest. Any allegation of an arrest arises out of Mr. Estep being handcuffed, which Plaintiff alleges occurred as Officers Matory and Styles arrived, *see id.* ¶ 22, or even before, *see id.* ¶¶ 55, 67. In seeking to differentiate *Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996), Plaintiff argues the officers there "arrived on the scene late and lacked knowledge of an important fact," *see* Pl.'s Opp'n at 17, but then inverts precedent to argue Officers Matory and Styles "had no basis to think Niko had committed any offense," *see id.* The Court in *Scott*, ruling for the District on false arrest claims against two officers, reasoned "they could not have known from their own observations" that another officer did not observe a particular element of an offense. *See* 101 F.3d at 755. Yet Plaintiff demands the late-arriving officers here learn facts favorable to her from the observations of others, effectively asking police officers to prove the absence of a negative—that the accused did *not* commit criminal misconduct—immediately upon arrival to a potentially volatile scene to avoid individual liability. Further, though Plaintiff argues Officer Flete-Sosa "was present for the entire incident" and "ma[de] physical contact with

12

Niko[,]" *see* Pl.'s Opp'n at 17, she does not plausibly allege that he jointly contributed to any false arrest, nor that he at any point detained Mr. Estep himself. Plaintiff does not allege Officer Flete-Sosa chased Mr. Estep, handcuffed him, gripped him, or reapplied handcuffs at any point. *See* Pl.'s Compl. ¶¶ 18–20. Finally, the District reiterates its previously stated arguments as to the common law offenses of false arrest, *see* Defs.' MTD at 10–11, and battery, *see id.* at 14–16.

## IV.    **Plaintiff's Bystander Liability Claims Are Disjointed, Largely Improper, and Entirely Repetitive of the Joint and Several Liability Assertions.**

Plaintiff's disjointed allegations of bystander liability against Officers Flete-Sosa, Matory, and Styles—asserted apparently as to the constitutional and common law claims, and while applying principles of negligence to charges of intentional tort, *see* Pl.'s Opp'n at 26–27— are similarly fraught. Plaintiff cites to the Fourth Circuit's bystander liability test for § 1983 claims, *see, e.g.*, *Jackson v. District of Columbia*, 327 F.Supp.3d 52, 67 (D.D.C. 2018) (including as an element knowledge that a fellow officer is violating an individual's constitutional right), but then mushes her analysis for bystander liability for the common law claims too under that umbrella, *see* Pl.'s Opp'n at 26–29. But "[c]ommon law theories of vicarious liability are not identical to 'bystander liability' under § 1983[,]" and to hold a co-defendant liable for the intentional tort of another, "the plaintiff must show some basis for vicarious liability under the common law, such as aiding and abetting or conspiracy." *Jackson*, 327 F.Supp.3d at 68–69 (citation omitted). Plaintiff does not allege either basis. Instead, Plaintiff reiterates her bystander claims under common law are "rooted in" Defendants' duty to protect, *see* Pl.'s Opp'n at 27; *see also* Pl.'s Compl. ¶ 87 (discussing duty under common law battery claim), requesting leave to amend if the Court finds a standalone negligence claim is preferable, *see* Pl.'s Opp'n at 27 n.6. As discussed *supra*, an opposition is an improper means to amend.

Nevertheless, Plaintiff's § 1983 bystander claims fail. The test requires (1) knowledge that a peer officer is violating an individual's constitutional right(s), (2) a reasonable opportunity to prevent the harm, and (3) a choice not to act. *Jackson*, 327 F.Supp.3d at 67. Plaintiff alleges Officers Matory and Styles were not present until, at the earliest, the moment Officer Lopez handcuffed Mr. Estep. *See* Pl.'s Compl. ¶¶ 22, 55, 67. They would not have knowledge of, nor an opportunity to prevent, any wrongdoing that occurred when they were not on the scene. *See Jackson*, 327 F.Supp.3d at 67 (holding co-defendant officer cannot be held liable as bystander "because officers arriving on the scene after a constitutional violation has occurred obviously do not have a reasonable opportunity to prevent the violation from occurring"). Though Plaintiff alleges Officer Flete-Sosa was physically present for the duration of events, *see generally* Pl.'s Compl., no constitutional violation was committed, nor did Officer Flete-Sosa have a reasonable opportunity to prevent one even if one was. Plaintiff faults Officer Lopez for chasing a fleeing Mr. Estep, *see, e.g.*, Pl.'s Opp'n at 9, which immediately preceded any corralling, *see* Pl.'s Compl. ¶ 15 ("When Defendant Lopez caught Niko, he grabbed the back of Niko's jacket and jerked him backwards, horse-collaring Niko and causing him to fall to the pavement"), and is the primary basis for Plaintiff's excessive force claim. But Officer Flete-Sosa would only have feasibly been able to prevent this harm if he chased Mr. Estep alongside Officer Lopez and been in a position to intercept Officer Lopez or catch Mr. Estep first. Separately, any bystander claim as to Officer Flete-Sosa for unreasonable seizure fails for a myriad of reasons. Plaintiff acknowledges the chase constituted "most of the incident," *see* Pl.'s Opp'n at 9, leaving for inference the time Mr. Estep spent in handcuffs was minimal. *See, e.g.*, *James v. United States*, 48 F.Supp.3d 58, 66 (D.D.C. 2014) (finding "brief detention in handcuffs" did not give rise to plausible claim for relief for plaintiff who alleged he was falsely accused of assault). It is also

unclear how Officer Flete-Sosa could have reasonably prevented any constitutional violation, other than to suggest Officer Lopez not handcuff Mr. Estep, which he could have easily ignored.

## V.    Plaintiff's Authorities in Support of Her Intentional Infliction of Emotional Distress Argument Are Unavailing on Extreme and Outrageous Conduct.

In arguing Plaintiff states a claim for intentional infliction of emotional distress, Plaintiff selectively cribs language from authorities that do not support her position. First, Plaintiff argues "[c]ourts often find this element [extreme and outrageous conduct] satisfied when there is an 'abuse of position of authority, particularly by, *inter alia*, police officers,'" *see* Pl.'s Opp'n at 29–30 (quoting *Drejza v. Vaccaro*, 650 A.2d 1308, 1314 (D.C. 1994)), but *Drejza* merely provides, as one example, "outrageous conduct *may consist of* the abuse of position of authority, particularly by, *inter alia*, police officers." 650 A.2d at 1314 (alterations, citation, and internal quotation marks omitted; emphasis added). Plaintiff then cites to *Xingru Lin v. District of Columbia*, 268 F.Supp.3d 91 (D.D.C. 2017) as a vehicle to other cases in which interactions with police officers have given rise to intentional infliction of emotional distress claims, but the cases cited therein are easily distinguishable. In one, the plaintiff alleged the officers pushed, shoved, and jerked the pregnant woman-plaintiff as they brought her out of her apartment, made explicit, offensive remarks, and then brought her on an intentionally turbulent ride to the precinct. *See Daniels v. District of Columbia*, 894 F.Supp.2d 61, 68 (D.D.C. 2012). In the second case, the plaintiff alleged the officers "recklessly and intentionally fabricated facts" to support his arrest and detention, but the claim was disposed of on summary judgment after the evidence did not support the allegations. *See Liser v. Smith*, 254 F.Supp.2d 89, 106 (D.D.C. 2003). In the third case, the plaintiff alleged officers unlawfully entered his home, killed his pet dog, detained him for 22 hours, and failed to secure the home after the arrest, resulting in more than $6,000 in property loss. *See Amons v. District of Columbia*, 231 F.Supp.2d 109, 118 (D.D.C. 2002).

Plaintiff asserts the Defendants' purported lack of effort "to defend Defendant Lopez's conduct based on the actual facts of this case speaks volumes," *see* Pl.'s Opp'n at 31, but it is Plaintiff who overstates her position and has muddied the timeline of the nearly six-year-old events such that "the actual facts of this case" seem elusive. Plaintiff cannot plausibly allege extreme and outrageous conduct to survive a motion to dismiss based on the precedent she cites. She presents the allegations in a list, *see* Pl.'s Opp'n at 30, to portray them as more egregious, but this effort is rife with error. She states Officer Lopez ". . . (ii) *roughly* horse-collared [Mr. Estep] to the ground[,]" *id.* (emphasis added on new qualifier to allegation), and states he ". . . (vi) taunted Niko while he was detained, *after* he had already wet himself and repeatedly cried out in fear[,]" *id.* (emphasis added on timeline, as discussed *supra*). Lastly, Plaintiff latches on to case law to support extreme and outrageous conduct where the officer knows that a person "is peculiarly susceptible to emotional distress, by reason of some physical or medical condition or peculiarity." *See* Pl.'s Opp'n at 30 (quoting *Drejza*, 650 A.2d at 1313). But Plaintiff does not allege Officer Lopez knew Mr. Estep was peculiarly susceptible to emotional distress. She does not allege any prior dealings between the parties, other than that Mr. Estep disrespected the officers at the outset of this incident. Pl.'s Compl. ¶ 15. It is not plausible he would have known Mr. Estep was so susceptible to distress.

**VI.    Plaintiff Does Not Plausibly Allege Basis for § 1983 Municipal Liability for Widespread Practice or Custom, Plus Deliberate Indifference Thereto.**

Plaintiff clarifies her municipal liability claim under § 1983 to argue "three paths to *Monell* liability" that she argues do not require an express policy—(1) that "the practice by MPD officers of unlawfully detaining and/or handcuffing children during the relevant time period was so widespread that it had become 'custom'"; (2) that "the District's failure to timely enact policy changes despite having knowledge of the problem amounted to deliberate indifference"; and (3)

16

that "the District was deliberately indifferent by virtue of its failure to adequately train or supervise its officers." *See* Pl.'s Opp'n at 33–34. In addition to general stop data, which does not expound as a data field whether people were handcuffed (the widespread practice Plaintiff alleges—that minors were unlawfully detained and/or handcuffed), *see Stop Data*, METRO. POLICE DEP'T, *available at* https://mpdc.dc.gov/stopdata (last visited Mar. 11, 2025); Pl.'s Compl. ¶ 43, and one-off comments by city leaders and commentators, *see id.* ¶¶ 37, 41, 46–48, Plaintiff leans on three other incidents concerning police interactions with Black children—in December 2018, *see id.* ¶ 39; February 2019, *see id.* ¶ 40; and March 2019, *see id.* ¶ 41—to argue knowledge of, and a failure to act on, a widespread practice. *See* Pl.'s Opp'n at 34–39.

Plaintiff's allegations of a widespread custom or practice are insufficient to survive a motion to dismiss. She cites *Bah v. District of Columbia*, Case No. 23-cv-1248 (JDB), 2024 WL 983329 (D.D.C. Mar. 7, 2024), in support, but its facts are incongruent. In *Bah*, the plaintiff was stabbed repeatedly in the lower back, abdomen, and right eye by a peer inmate armed with a knife. *See* 2024 WL 983329, at *1. In arguing the District's failure to train guards on contraband control, failure to supervise inmates, and failure to adequately staff housing units caused his injuries, the plaintiff pleaded a history of past inmate stabbings (eight), as well as (1) a U.S. Marshals' memorandum concerning, among other things, "inconsistent and sloppy" screening procedures at the jail and observable inmate injuries without corresponding medical or incident reports, (2) an Office of the Inspector General report concerning lapses in security practices, and (3) an independent report noting pervasive understaffing at the jail. *See id.* at *2, 5–7. Plaintiff's Complaint lacks this "factual heft," *see, e.g.*, *Tyson v. District of Columbia*, Case No. 20-cv-1450, 2021 WL 4860685, at *10 (D.D.C. Oct. 19, 2021), to support her allegations.

Even assuming the District was on notice of this purported widespread custom or practice of constitutional violations, which it contests, Plaintiff fails to plausibly allege deliberate indifference on her outstanding *Monell* arguments. "Deliberate indifference is an objective standard that means that when a city is 'faced with actual or constructive knowledge that its agents will probably violate constitutional rights, the city may not adopt a policy of inaction.'" *Tyson*, 2021 WL 4860685, at *12 (quoting *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004)). It is a "stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and internal quotation marks omitted). Plaintiff cannot overcome this burden. Plaintiff argues the District "adopted a policy of inaction by failing to . . . timely implement a handcuffing or detention policy for young kids designed to prevent misconduct[.]" *See* Pl.'s Opp'n at 40–41. But Plaintiff acknowledges MPD issued new guidance concerning the arrest of minors in January 2020, *see* Pl.'s Compl. ¶ 47, eight months after the incident involving Mr. Estep and no more than 13 months past any of the interactions with Black children Plaintiff relies on as analogous, *see* Pl.'s Compl. ¶¶ 39–41. Plaintiff's failure to train and properly supervise officers fail for reasons previously asserted, *see* Defs.' MTD at 23–24, including that Plaintiff fails to plausibly allege how previous incidents put the District on notice of future ones.

## CONCLUSION

For these reasons, and the reasons stated in Defendants' motion to dismiss, the Court should dismiss Plaintiff's Complaint in its entirety.

Date: March 14, 2025                                    Respectfully submitted,

                                                        BRIAN L. SCHWALB
                                                        Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Fernando Amarillas*
FERNANDO AMARILLAS [974858]
Assistant Deputy Attorney General
Civil Litigation Division

*/s/ Patrick Duprey*
JESSICA KRUPKE [1019967]
PATRICK DUPREY [90030521]
Assistant Attorneys General
Civil Litigation Division, Section I
400 6th Street, NW
Washington, D.C. 20001
(202) 805-7562
(202) 957-2861
jessica.krupke@dc.gov
patrick.duprey@dc.gov

**Counsel for Defendants District of Columbia, Officer Wilfredo Flete-Sosa, Officer Marshond Matory, Daniel Styles, and Joseph Lopez**