# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AUTUMN DRAYTON, as Personal Representative and Successor in Interest of the Estate of Niko Estep, | ) ) ) ) |  |
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Civil Action No. 24-3023 (RBW) |
| DISTRICT OF COLUMBIA, et al., | ) ) ) |  |
| Defendants. | ) ) |  |

## <u>MEMORANDUM OPINION</u>

On April 22, 2019, a nine-year-old Black child named Niko Estep ("Estep") was chased, tackled, handcuffed, and restrained by Metropolitan Police Department ("MPD") Officer Joseph Lopez ("Officer Lopez").  See Complaint ("Compl.") ¶¶ 14–18, ECF No. 1.  Estep was subsequently hospitalized to treat the injuries he suffered during this encounter.  Id. ¶ 29.  Four years later, "[i]n 2023, when [Estep] was just fourteen years old, [he] was tragically killed in a shooting."  Id. ¶ 36.

Estep's mother, Autumn Drayton, is pursuing this civil action on behalf of the estate of her deceased son against the defendants, the District of Columbia ("the District"), Officer Lopez, Officer Wilfredo Flete-Sosa ("Officer Flete-Sosa"), Officer Marshond Matory ("Officer Matory"), and Officer Daniel Styles ("Officer Styles"), collectively "the defendants," asserting Fourth Amendment constitutional violations of unreasonable seizure and excessive force, see Compl. ¶¶ 52, 63; Monell[1] liability as to the District based on those alleged violations pursuant to 42 U.S.C. § 1983, see id. ¶ 73; and common law tort claims for battery, false arrest, and

---

[1] Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978).

intentional infliction of emotional distress, see id. at 1.  Currently pending before the Court is the

defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)

for failure to state a claim upon which relief can be granted.  See Defendants' Motion to Dismiss

the Plaintiff's Complaint ("Defs.' Mot."), ECF No. 22.  Upon careful consideration of the

parties' submissions,[2] the Court concludes for the following reasons that it must grant in part and

deny in part the defendants' motion.  Specifically, the Court will grant the defendants' motion as

to all Counts against Officers Styles and Matory, and Count V as to Officer Flete-Sosa.  The

Court will deny the defendants' motion as to all Counts alleged against Officer Lopez.  Finally,

the Court will deny the defendants' motion to dismiss as to all Counts against the District.

## I.    BACKGROUND

### A.  Factual Background

The following allegations are derived from the plaintiff's Complaint unless otherwise

specified.  The event began when Estep, who "stood just over four feet tall[]" and "weighed

seventy pounds[,]" "was leaning against a parked car in Northwest [Washington] D.C."  Compl.

¶¶ 1, 14.  Estep was approached by MPD officers Joseph Lopez and Wilfredo Flete-Sosa, who

"told him to get off the car," id. ¶ 14; Defs.' Mem. at 2.  Officers "Lopez and Flete-Sosa were

both in full MPD uniforms equipped with an outer ballistic vest, flashlight, ASP [("Armament

Systems and Procedures expandable baton")], and sidearm."  Compl. ¶ 17.  The two "men were

nearly two feet taller and least 120 pounds heavier than [Estep]."  Id.  In response to the officers

command, Estep "made a disrespectful comment" to the officers, id. ¶ 15, "and then ran away."

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision:  (1) the Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiff's
Complaint ("Defs.' Mem."), ECF No. 22-1; (2) the Plaintiff's Opposition to Defendants' Motion to Dismiss ("Pl.'s
Opp'n"), ECF No. 23; and (3) the Defendants' Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss
("Defs.' Reply"), ECF No. 24.

Id. Officer Lopez chased Estep "through the street and around several cars," id., until he ultimately "caught [Estep], . . . grabbed the back of [Estep]'s jacket and jerked him backwards, horse-collaring [Estep] and causing him to fall to the pavement." Id. After Officer Lopez detained Estep, he was "joined by Officer Flete-Sosa." Id. Officer "Lopez held [Estep] roughly by his arm and dragged him to the sidewalk, while [Officer] Flete-Sosa followed closely and repeatedly nudged [Estep] along with his hand." Id. Officer "Lopez then pulled [Estep]'s hands behind his back and handcuffed him." Id. ¶ 16; Defs.' Mem. at 2. "While [Estep] was handcuffed, [Officer] Lopez . . . tightly gripp[ed] [Estep]'s left arm [and] repeatedly and forcefully pulled [Estep] upright or closer to him several times." Compl. ¶ 19. "At one point, the handcuffs slipped off of [Estep]'s [ ] wrists" and Officer Lopez "reapplied the handcuffs tightly while [Estep] cried out." Id. ¶ 20. According to the plaintiff, "[t]hroughout the time [Estep] was being chased, tackled, and handcuffed, [he] was hysterical and] was so fearful and distressed by the officers' conduct that he wet himself[.]" Id. ¶ 18.

After Estep was handcuffed, "a crowd of onlookers gathered and questioned" Officers Lopez and Flete-Sosa "about why they were handcuffing" Estep. Id. ¶ 21. "While [Estep] was detained and handcuffed, [Officers] Marshond Matory and Daniel Styles arrived on the scene[,]" id. ¶ 22, and "stood between the public bystanders and [Officer] Lopez, who was holding [Estep] in handcuffs." Id. The plaintiff also alleges that during the detention, Officer Lopez "mocked [Estep] by telling him that he should not be hanging out with older boys if he was going to 'cry as soon as [he] g[o]t caught[,]'" id. ¶ 24, and that "if he was going to talk a big game, he should 'act it.'" Id. The only investigatory actions that the plaintiff alleges were taken by Officers Lopez and Flete-Sosa was their "repeated[] demand[] that [Estep] tell them his mother's

name[,]" id. ¶ 23, and when Estep refused, their "state[ment] that they would not release him or remove the handcuffs until they located his mother." Id. Estep was also "unarmed." Id. ¶ 24.

After [Estep] was "detained in handcuffs for an extended period of time," id. ¶ 22, "the handcuffs were removed, . . . [he] was not charged with any offense[,]" and "was released to his mother." Id. ¶ 27–28. "[W]hile in the presence of the [officers]" Estep "indicated . . . that his arm was hurt." Id. ¶ 27.

Following Estep's release, the plaintiff took him "to the Children's Hospital at the United Medical Center, where he was treated for contusions on his foot and arm, a knot on his forehead, and several abrasions on his back and around his wrists." Id. ¶ 29. The plaintiff contends that after Estep's encounter with the police officers on April 22, 2019, his demeanor and mental health "changed drastically and in lasting ways." Id. ¶ 30. For example, he "was diagnosed with acute PTSD [(post-traumatic stress disorder)] and major depressive disorder stemming from" the encounter. Id. The plaintiff further contends that the encounter with the officers "was so traumatic that it led [Estep] to attempt suicide in July 2019, resulting in a visit to the emergency room and admission to an in-patient psychiatric ward." Id. ¶ 31. After the event, Estep allegedly "suffered from a debilitating fear that police would come to his home and take him away or harm him or his family members," id. ¶ 32, and "suicidal ideations" that "[his] treating physicians noted [] [Estep] had never experienced . . . before" the encounter. Id. The plaintiff further contends that Estep's "performance in school also suffered" in part because "other students teased him about the [encounter] and the fact that he had cried and urinated on himself while being chased and detained by police." Id. ¶ 33. The plaintiff alleges that Estep "transferred schools at least four times between fifth and ninth grade." Id.

When Estep "was fourteen years old, [he] was tragically killed" after being shot. Id. ¶ 36.

**B.  Procedural Background**

The plaintiff filed her complaint on October 23, 2023.  See id. at 20.  On February 4,

2025, the defendants filed their motion to dismiss for failure to state a claim under Federal Rule

of Civil Procedure 12(b)(6).  See Defs.' Mot. at 27.  The plaintiff filed her opposition to the

defendants' motion to dismiss on February 28, 2025, see Pl.'s Opp'n at 44, and the defendants

filed their reply in support of their motion on March 14, 2025, see Defs.' Reply at 18.

## II.    STANDARD OF REVIEW

A Rule 12(b)(6) motion tests whether a complaint "state[s] a claim upon which relief can

be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss [under Rule 12(b)(6)], a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads

factual content that allows the [C]ourt to draw [a] reasonable inference that the defendant is

liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss under Rule 12(b)(6), "the Court must construe the

complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be

derived from the facts alleged.'"  Hettinga v. United States, 677 F.3d 471, 476 (D.C. Cir.

2012) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)).  While the Court

must "assume the[] veracity" of any "well-pleaded factual allegations" in a complaint,

conclusory allegations "are not entitled to the assumption of truth."  Iqbal, 556 U.S. at 679.  Thus,

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  Id. at 678 (citing Twombly, 550 U.S. at 555).  Also, the Court need

not accept "legal conclusions cast as factual allegations," or "inferences drawn by [the] plaintiff

if those inferences are not supported by the facts set out in the complaint." <u>Hettinga</u>, 677 F.3d at

476.  The Court "may consider only the facts alleged in the complaint, any documents either

attached to or incorporated in the complaint[,] and matters of which [the Court] may take judicial

notice." <u>EEOC v. St. Francis Xavier Parochial Sch.</u>, 117 F.3d 621, 624 (D.C. Cir. 1997).

### III.     ANALYSIS

The Court will first consider the constitutional claims asserted by the plaintiff pursuant to

§ 1983 for the alleged violations of Estep's Fourth Amendment rights to be free from

unreasonable seizure and excessive force by the individual defendants, and the alleged <u>Monell</u>

violation by the District.  Once the Court assesses whether the constitutional claims survive the

defendants' motion to dismiss, the Court will then address the common law claims filed against

the defendants.

### A.     Constitutional Claims Pursuant to § 1983

"Every person who, under color of any statute, ordinance, regulation, custom, or usage,

of any State or Territory or the District of Columbia, subjects . . . [any] person within the

jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws, shall be liable to the party injured in any action at law[.]" 42 U.S.C.

§ 1983.  "A municipality or local government, such as the District [of Columbia], is a 'person'

for section 1983 purposes." <u>Frederick Douglass Found., Inc. v. District of Columbia</u>, 82 F.4th

1122, 1136 (D.C. Cir. 2023) (citing <u>Monell</u>, 436 U.S. at 692).  "To state a claim under section

1983, a plaintiff must allege both (1) that he [or she] was deprived of a right secured by the

Constitution or laws of the United States, and (2) that the defendant acted 'under the color of' the

law of a state, territory or the District of Columbia." <u>Hoai v. Vo</u>, 935 F.2d 308, 312 (D.C. Cir.

1991).  "[I]t is only violations of <u>rights</u>, not <u>laws</u>, which give rise to § 1983 actions." <u>Gonzaga</u>

Univ. v. Doe, 536 U.S. 273, 283 (2002).  Accordingly, only "an unambiguously conferred right [may] support a cause of action brought under § 1983."  Id.

### 1. The Plaintiff's Unreasonable Seizure Claim (Count I)

The Court first addresses the plaintiff's Fourth Amendment claims against the individual defendants.  The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV.  Where, as here, "[t]h[e] case concerns the [alleged] 'seizure' of a 'person,' . . . [the question becomes whether] 'physical force' or a 'show of authority' [] 'in some way restrain[ed] the liberty' of the person."  Torres v. Madrid, 592 U.S. 306, 311 (2021) (quoting Terry v. Ohio, 392 U.S. 1, 19 (1968)).

"To make out a claim of unreasonable seizure, [the plaintiff] must show that (1) the challenged actions constitute a seizure, and (2) the seizure was unreasonable."  Robinson v. District of Columbia, 130 F. Supp. 3d 180, 191 (D.D.C. 2015).  A seizure "requires either physical force . . . or, where that is absent, submission to the assertion[—or 'show'—]of authority."  California v. Hodari D., 499 U.S. 621, 626 (1991).  As to what amounts to physical force, "[e]ven 'a mere touch' can satisfy this rule, and the force need not ultimately 'succeed' in subduing the person to amount to a seizure.'"  Jones v. District of Columbia, No. 21-cv-836, 2021 WL 5206207, at *4 (D.D.C. Nov. 9, 2021) (quoting Torres, 592 U.S. at 317).  However, "for an officer's application of physical force to qualify as a seizure, the officer must 'use [the] force with intent to restrain'; that is, with the intent to 'apprehend.'"  Id. (quoting Torres, 592 U.S. at 317).  "Courts determine whether an officer intended to restrain by examining 'whether the challenged conduct objectively manifests an intent to restrain,' rather than by inquiring into the officer's subjective motives."  Id. (quoting Torres, 592 U.S. at 317).

For a Fourth Amendment violation to occur, a seizure must also be unreasonable.  "A seizure may be unreasonable both because it was unjustified under the circumstances—i.e., the police lacked probable cause to arrest or reasonable suspicion to seize the suspect—or because the force used to effectuate it was excessive."  Robinson, 130 F. Supp. 3d at 192; see Graham v. Connor, 490 U.S. 386, 395 (1989) ("[T]he 'reasonableness' of a particular seizure depends not only on when it is made, but also on how it is carried out.") (quoting Tennessee v. Garner, 471 U.S. 1, 7–8 (1985)).

### a. Whether the Plaintiff Has Adequately Pleaded That Officer Lopez Violated Estep's Fourth Amendment Right Against Unreasonable Seizure and Whether Officer Lopez is Shielded by Qualified Immunity

The Court first considers the plaintiff's Fourth Amendment claim against Officer Lopez, who she contends chased, tackled, handcuffed, and restricted Estep.  The plaintiff argues that Officer "Lopez unlawfully detained [Estep] . . . without reasonable suspicion to stop him, nor a warrant or probable cause to arrest him, when he forced [Estep] to the ground, placed [Estep] in handcuffs, and prevented [Estep] from leaving the scene for an extended period of time."  Compl. ¶ 53.  With respect to the motion to dismiss, Officer Lopez asserts that the doctrine of qualified immunity precludes any claim against him for his actions relating to Estep.  See Defs.' Mem. at 5.

The doctrine of qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  To determine whether a government official is entitled to qualified immunity, the Court must first "decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right[,]" id. at 232, (internal citations omitted), and "[s]econd, if the plaintiff has satisfied this first step, the

court must decide whether the right at issue was 'clearly established' at the time of [the] defendant's alleged misconduct." Id.

For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he [or she] is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). Furthermore, courts "do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions."). "The dispositive question is 'whether the violative nature of particular conduct is clearly established[,]'" Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting al-Kidd, 563 U.S. at 742), and this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition[,]" Brosseau v. Haugen, 543 U.S. 194, 198 (2004). "The proponent of a purported right has the 'burden to show that the particular right in question was clearly established' for qualified-immunity purposes[,]" Daugherty v. Sheer, 891 F.3d 386, 390 (D.C. Cir. 2018) (quoting Dukore v. District of Columbia, 799 F.3d 1137, 1145 (D.C. Cir. 2015)), but the Court must also "draw[ ] inferences in favor of the non[-]movant, even when . . . [the C]ourt decides only the clearly-established prong of the standard." Tolan v. Cotton, 572 U.S. 650, 657 (2014).

Here, the Court finds for several reasons that qualified immunity does not preclude the plaintiff's from proceeding with Count I against Officer Lopez. First, the facts unequivocally alleged by the plaintiff is that Estep was seized by Officer Lopez. The plaintiff alleges that after being chased by Officer Lopez, Officer Lopez "grabbed the back of [Estep]'s jacket and jerked him backwards, horse-collaring [him] and causing him to fall to the pavement." Compl. ¶ 15.

Officer Lopez then allegedly "pulled [Estep]'s hands behind his back and handcuffed him." Id. ¶ 16. These allegations clearly evidence Officer Lopez's intent not only to detain Estep, but illustrate the actual "force with intent to restrain" Officer Lopez used against Estep to prevent Estep of further movement. Torres, 592 U.S. at 317.

The Court next considers whether or not the seizure was reasonable under the circumstances. In analyzing this question, the Court also assesses whether the right at issue was "clearly established" at the time of the encounter, i.e., whether it was a "right[] of which a reasonable person would have known." Pearson, 555 U.S. 223 at 231. The plaintiff alleges both that the seizure was unreasonable, and that "it was clearly established at the time of the [i]ncident that [Officer Lopez] could not seize an individual who had done nothing suggestive of criminal behavior." Pl.'s Opp'n at 13 (listing cases). The defendants argue that Estep's right against unreasonable seizure were not violated and that Officer Lopez's detention of Estep was lawful because the seizure was justifiable as a Terry stop. See Defs.' Mem. at 7 (citing Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry, 392 U.S. at 30) (requiring only "reasonable, articulable suspicion that criminal activity is afoot"). The plaintiff responds, asserting that Officer Lopez's actions went beyond the scope of a Terry stop into the realm of an arrest, see Pl.'s Opp'n at 10, and that his conduct violated Estep's clearly established right to be free from seizure based on the circumstances in this case. The Court agrees with the plaintiff.

Although the standard for effectuating a lawful Terry stop is certainly less stringent than that for an arrest, Officer Lopez was nonetheless required to possess reasonable suspicion that Estep was potentially engaged in criminal activity. But, the facts as pleaded in the Complaint fail to show that Officer Lopez possessed even this lower threshold. The Complaint makes clear that Estep was confronted for nothing more than "leaning on a parked car," Compl. ¶ 14,

10

"ma[king] a disrespectful comment," id. at ¶ 15, and then "r[unning] away" from Officer Lopez.
Id.  On these facts the Court cannot find any reasonable basis for Officer Lopez chasing, tackling,
handcuffing, and restraining Estep, especially because "the Supreme Court in Wardlow did not
adopt a per se rule authorizing the temporary detention of anyone who flees upon seeing a police
officer.  Instead, the Court explicitly rejected the proposition that flight is 'necessarily indicative
of wrongdoing[,]'" Daniels v. District of Columbia, 894 F. Supp. 2d 61, 66 (D.D.C. 2012)
(quoting Wardlow, 528 U.S. at 124).

In Wardlow, the Court found that the officer's actions were reasonable because the flight
was "unprovoked" and happened in "an area of heavy narcotics trafficking."  Wardlow, 528 U.S.
at 124.  Here, the defendants merely claim that "[b]ecause [] Estep had attempted to flee, it was
not clear to a reasonable officer under the circumstances that it was a violation of [] Estep's
constitutional rights to place [] Estep in handcuffs."  Defs.' Mem. at 9.  However, the
defendants' contention contravenes the holding in Wardlow and cases that have applied it, see
Daniels, 894 F. Supp. 2d at 66; see also Posey v. United States, 201 A.3d 1198, 1204 (D.C. 2019)
("Flight is not merely a box that, once checked, automatically justifies a stop.").  Without more,
i.e., evidence of suspicious or unlawful conduct by Estep—especially considering the fact that he
was a nine-year-old boy who was only four feet tall, weighed only seventy pounds, and was
unarmed—Officer Lopez did not have reasonable suspicion to effectuate a Terry stop of Estep.

The defendants also argues that the "disrespectful comment" made by Estep could justify
his detention, asserting that "comments may range from benign to unlawful threats."  Defs.'
Reply at 5.  However, the defendants also correctly note that there are no facts evincing the
content of Estep's disrespectful comment.  Id.  Thus, the defendants are essentially asking the
Court to make a factual inference in their favor regarding the content of the disrespectful remark

and its applicability to reasonable suspicion, when under the applicable standard of review, the

Court must do the opposite and instead construe the facts in the plaintiff's favor.  See Hettinga,

677 F.3d at 476.  Moreover, "[s]peech [that] is [] provocative and challenging . . . is nevertheless

protected against censorship or punishment [pursuant to the First Amendment], unless shown

likely to produce a clear and present danger of a serious substantive evil that rises far above

public inconvenience, annoyance, or unrest."  City of Houston v. Hill, 482 U.S. 451 (1987)

(citing Terminiello v. Chicago, 337 U.S. 1, 4 (1949)).

Therefore, because Estep's flight in conjunction with his "disrespectful comment" were

insufficient to constitute reasonable suspicion for a lawful detention, the Complaint presents

insufficient facts to elevate Officer Lopez's chasing, tackling, handcuffing, and restraining of

Estep into the realm of reasonableness.  Thus, the Court finds that the plaintiff has adequately

pleaded that Officer Lopez's seizure of Estep was unreasonable.  And, based on that finding, the

Court concludes that the plaintiff has adequately pleaded that Officer Lopez violated Estep's

clearly established right to be free from arbitrary detention.  Accordingly, the defendants' motion

to dismiss Count I as to Officer Lopez is denied.

> **b.  Whether the Plaintiff Has Adequately Pleaded That Officer Flete-Sosa Violated Estep's Fourth Amendment Right Against Unreasonable Seizure and Whether Officer Flete-Sosa is Shielded by Qualified Immunity**

The plaintiff also asserts that Officer Flete-Sosa violated Estep's Fourth Amendment

right against unreasonable seizure through his participation and failure to intervene in Estep's

detention.  See Compl. ¶ 54.  Specifically, the plaintiff argues that Officer "Flete-Sosa was

present for the entirety of [Estep]'s detainment and participated directly in the unreasonable

seizure[,]" id., including being "present during the chase, tackling, [] handcuffing[,]" id., and

"interrogat[ing] [of Estep] for his mother's name after [Officer] Lopez placed the child in

handcuffs." Id.  The plaintiff also contends that Officer Flete-Sosa "stood guard while [Estep] was detained and acted as a barrier between other innocent bystanders and [Estep]." Id.  In response, the defendants argue that Officer Flete-Sosa is shielded by qualified immunity "because [his] conduct did not violate clearly established law."  Defs.' Mem. at 7.

Because it was Officer Lopez who chased, tackled, and handcuffed Estep, see Compl. ¶¶ 15–16, Officer Flete-Sosa did not execute the actual detention of Estep, but merely "stood guard while [Estep] was detained." Id. ¶ 54.  Thus, the Court will not conclude that, based on the facts alleged, he is directly liable for the detention of Estep.  However, having already concluded the plaintiff has adequately pleaded that Officer Lopez's chasing, tackling, handcuffing, and detaining of Estep constituted an unreasonable seizure which violated Estep's clearly established right against unlawful detention, see supra, Section III.A.1.a, the Court will consider whether Officer Flete-Sosa is subject to liability under the doctrine of bystander liability.

To establish a claim for bystander liability against a police officer in the District of Columbia, a plaintiff must demonstrate that an officer "(1) knows that a fellow officer is violating an individual's constitutional right; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act."  Fernandors v. District of Columbia, 382 F. Supp. 2d 63, 72 (D.D.C. 2005) (citing Randall v. Prince George's County, 302 F.3d 188, 204 (4th Cir. 2002)).  The plaintiff's claim, at the motion-to-dismiss stage, is sufficient to plausibly allege that Officer Flete-Sosa is liable as a bystander for the Fourth Amendment unreasonable seizure violation of Estep.  As previously discussed, the plaintiff alleges that both Officer Flete-Sosa and Officer Lopez first "approached [Estep] and told him to get off of the car" he "was leaning against." Id. ¶ 14.  Additionally, the plaintiff contends that Officer Flete-Sosa took no action when he saw Officer Lopez chase and detain Estep despite knowing that Officer Lopez had no reasonable or

particularized suspicion of criminal activity on the part of nine-year-old Estep.  See supra,

Section III.A.1.a.  Moreover, the plaintiff contends that Officer Flete-Sosa took no action even

though Officer Lopez's pursuit of Estep went "through the street and around several cars."

Compl ¶ 15.  Further, according to the plaintiff, Officer Flete-Sosa did not act to uncuff or

release Estep in a timely manner after his tackling and handcuffing despite the obvious lack of

particularized suspicion underlying the detention.  See id.  Given the time frame during which

Officer Flete-Sosa could have intervened, at least at a minimum verbally either during or after

the chase ended, or even physically after the termination of the chase, the plaintiff has plausibly

alleged that Officer Flete-Sosa is liable for the Fourth Amendment unreasonable seizure

violation under the bystander liability doctrine.

Lastly, for the same reasons that Officer Lopez's actions are not shielded by qualified

immunity, see supra, Section III.A.1.a, Officer Flete-Sosa is also not shielded by qualified

immunity.  Officer Flete-Sosa is alleged to have been present to witnesses the unreasonable use

of force Officer Lopez used against Estep from the inception of the encounter, and therefore

would have appreciated that Officer Lopez lacked reasonable suspicion or probable cause to

detain Estep, yet the plaintiff alleges that he did nothing to prevent or even attempt to prevent the

harm Estep sustained.  See Johnson v. District of Columbia, 725 F. Supp. 3d 62, 72 (D.D.C. Mar.

20, 2024) (for purposes of qualified immunity on a bystander liability claim, the "test is whether

the [bystander] officer knew that a fellow officer was violating an individual's constitutional

rights") (citation modified).  Therefore, the defendants' argument that Officer Flete-Sosa "did

not violate clearly established law in [the Officers'] encounter with [] Estep" fails.  See Defs.'

Mem. at 9–10.  For these reasons, Officer Flete-Sosa is not shielded by qualified immunity and

the defendants' motion to dismiss Count I with respect to Officer Flete-Sosa is denied.

### c. Whether the Plaintiff Has Adequately Pleaded That Officers Matory and Styles Violated Estep's Fourth Amendment Right Against Unreasonable Seizure

The plaintiff next asserts that Officers Matory and Styles violated Estep's Fourth Amendment right against unreasonable seizure.  The plaintiff also seeks to hold Officers Matory and Styles liable under a theory of bystander liability[3], as described above, under her § 1983 claim, see Compl. ¶ 60.  In response, the defendants argue that "Officers Matory and Styles were not present until, at the earliest, the moment Officer Lopez handcuffed Estep," Defs.' Reply at 18, and therefore did not have the opportunity to reasonably prevent the harm alleged by the plaintiff from occurring.  For the following reasons, the Court agrees with Officers Matory and Styles that they did not violate Estep's Fourth Amendment right against unreasonable seizure.

First, the facts in the plaintiff's Complaint allege that Officers Matory and Styles did not arrive at the location of Estep's detention until after Officer Lopez had already begun handcuffing Estep, see Compl. ¶ 22 ("While [Estep] was being detained in handcuffs, [d]efendants Marshond Matory and Daniel Styles arrived on the scene"), leaving them no "reasonable opportunity to prevent the harm [alleged by the plaintiff]," Jackson v. District of Columbia, 327 F. Supp. 3d 52, 67 (D.D.C. 2018).  Despite the alleged legally deficient basis for Officer Lopez chasing and tackling Estep, the plaintiff's Complaint also shows that Officers Matory and Styles did not know why the encounter occurred, see Compl. ¶ 22, and therefore, could not have reasonably known that Estep's constitutional rights were potentially being violated by Officer Lopez.  Considering all the facts and circumstances asserted by the plaintiff, Officers Matory and Styles's conduct of merely standing "between the public bystanders and

---

[3] The plaintiff also seeks to hold Officers Matory and Styles "jointly and severally liable" for this Count (Count I), see Compl. ¶ 60, as well as for Counts II, IV, and V, see id. ¶¶ 70, 81, 87.  However, because "joint and several liability 'applies when there has been a judgment against multiple defendants[,]'" Honeycutt v. United States, 581 U.S. 443, 447 (2017) (emphasis added) (quoting McDermott, Inc. v. AmClyde, 511 U.S. 202, 220–21 (1994)), the Court will first determine if Officers Matory and Styles have any liability before determining whether the doctrine of joint and several liability is applicable.

[d]efendant [Officer] Lopez, who was holding [Estep] in handcuffs," id., did not represent a deliberate choice not to act in the face of a known constitutional violation. Rather, the Complaint shows that Officers Matory and Styles's conduct constituted a reasonable course of conduct by officers who arrived to the scene of a tense detention encounter between other officers and members of the community, devoid of any knowledge of what had caused the tense situation. Accordingly, because Officers Matory and Styles had no knowledge that a constitutional violation had been committed, there was no reasonable opportunity for them to act, and no deliberate choice by them not to intervene to stop a known constitutional violation. Moreover, their act of standing between the other officers, Estep, and members of the community seemed more designed to prevent escalation of the tense environment, rather than contributing to the further violation of Estep's constitutional rights. Thus, the plaintiff has not adequately stated a claim against them for the unreasonable seizure of Estep under the Fourth Amendment based on bystander liability. Therefore, the defendants' motion to dismiss for failure to state a claim as to Count I against Officers Matory and Styles is granted.

### 2. The Plaintiff's Excessive Force Claim (Count II)

The Court next addresses whether the actions of any of the officers violated Estep's Fourth Amendment right to be free of excessive force under § 1983. When a plaintiff alleges that the force used to effectuate a seizure was excessive, "[he or] she must prove that the force used to carry out that seizure was objectively unreasonable." Robinson, 130 F. Supp. 3d at 193. When conducting this inquiry, courts must do so from "the perspective of a reasonable officer on the scene." Graham, 490 U.S. at 396. "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. (citation omitted). "This balancing test is

both objective and fact-sensitive; it looks to the totality of the circumstances known to the officer at the time of the challenged conduct, and it accords a measure of respect to the officer's judgment about the quantum of force called for in a quickly developing situation." Martin v. Malhoyt, 830 F.2d 237, 261 (D.C. Cir. 1987) (internal citations omitted); United States v. Clark, ---F.4th---, 2025 WL 2884015, at *8 (D.C. Cir. Oct. 10, 2025). And, in conducting this analysis, courts consider factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; Clark, 2025 WL at *8.

### a. Whether the Plaintiff Has Adequately Alleged That Officers Lopez and Flete-Sosa Violated Estep's Fourth Amendment Right Against Excessive Force and Whether They Are Shielded by Qualified Immunity

The first issue to address regarding Count II is whether the plaintiff has adequately pleaded that Officers Lopez and Flete-Sosa violated Estep's Fourth Amendment right to be free from excessive force. The plaintiff contends that Officer "Lopez maliciously and intentionally employed excessive force and violence when he arrested" Estep, "by grabbing the back of his jacket, horse-collaring him, [and] forcefully pulling him to the ground" before eventually "applying handcuffs." Compl. ¶ 65. The plaintiff further alleges that the force used by Officer Lopez resulted in "contusions on [Estep's] foot and arm, a knot on his forehead, and several abrasions on his back," as well as "severe psychological trauma[.]" Id. The plaintiff also contends that Officer Flete-Sosa "was present during and participated directly in each instance of excessive force" and "[a]t no point did [he] [] act to challenge, question, or stop [d]efendant [Officer] Lopez's actions." Id. ¶ 66.

Officer Lopez's liability for the use of excessive force is predicated on the "sensible proposition that a police officer must have some justification for the quantum of force he uses." Johnson v. District of Columbia, 528 F.3d 969, 977 (D.C. Cir. 2008). The plaintiff argues that the Graham factors, see 490 U.S. at 396, support her claim that the force used by Officer Lopez was unconstitutionally excessive because he "used substantial force against a child, injuring and traumatizing him, without any legitimate need[,]" Pl.'s Opp'n at 18. The defendants again assert that Officer Lopez is shielded by qualified immunity from liability for Count II because "the allegations cannot overcome the reasonableness inquiry." Defs.' Mem. at 12.

For the following reasons, the Court finds that when viewing the allegations "from the perspective of a reasonable officer on the scene[,]" Graham, 490 U.S. at 396, with "a measure of respect to the officer's judgment about the quantum of force called for[,]" Malhoyt, 830 F.2d at 261, the plaintiff has succeeded at this stage of the case in stating a claim that Officer Lopez used an unreasonable quantum of force, and Officer Lopez's conduct is not shielded by qualified immunity.

First, with the benefit of the inferences the plaintiff is entitled to at the motion-to-dismiss stage, she has sufficiently alleged that Officer Lopez used an unreasonable amount of force against Estep. While the defendants argue that the only force alleged by the plaintiff is that Officer Lopez "ran down [the] fleeing Estep after a chase and briefly placed him in handcuffs[,]" Defs.' Reply at 7, the plaintiff has plausibly tied the factual allegations to Estep's injuries— specifically, that officer Lopez "grabb[ed] . . . , horsecollar[ed] . . . , [and] forcefully pull[ed Estep] to the ground, pull[ed] him up again by the arm, . . . handcuffed [Estep] tightly, . . . and repeatedly dragged [Estep] upright while [he] was handcuffed, injuring [his] arm." Compl. ¶ 65. According to the plaintiff, Officer Lopez's actions resulted in Estep sustaining "contusions on his

foot and arm, a knot on his forehead, [] several abrasions on his back[,] . . . [and] severe psychological trauma, culminating in long-term diagnoses of acute PTSD [] depression, and a suicide attempt followed by in-patient hospitalization." Id. And, the unreasonableness of Officer Lopez's conduct is predicated on the plaintiff's claim that Officer Lopez "violat[ed] [] [Estep]'s Fourth Amendment right" id. ¶ 64, considering that Estep was "a nine-year-old child[,]" id. ¶ 65, who only "weighed seventy pounds and stood just over four feet tall," id. ¶ 1, was merely "leaning against a parked car" and "made a disrespectful comment to [Officers] Lopez and Flete-Sosa." Id. ¶¶ 14–15. Applying the Graham factors to these allegations, the plaintiff has adequately alleged that Officer Lopez did not have a reasonable basis to apply the level of force he used against Estep.

The first Graham factor, the "severity of the crime at issue," Graham, 490 U.S. at 396, weighs in favor of the plaintiff, because, as she notes, "here, there is[] [n]one[,]" i.e., a suspected commission of a crime. Pl.'s Opp'n at 19. At this stage, the allegation that Officers Lopez unreasonably seized Estep without probable cause or even reasonable suspicion, see supra, Section III.A.1.b–c, merits the inference that Officer Lopez had no legal basis to employ any force to detain Estep.

Additionally, the second Graham factor also favors the plaintiff—i.e., "whether [Estep] [] pose[d] an immediate threat to the safety of the officers or others." See 490 U.S. at 396. The plaintiff alleges, and the defendants do not dispute, that Estep was "a nine-year-old Black boy who stood just over four feet tall and weighed seventy pounds[,]" Compl. ¶ 14, and based on what Officer Lopez knew when he chased and subdued Estep, there was no reason for the Officer to believe that Estep posed a serious threat to the much larger and older Officer Lopez, see id. ¶ 17 (alleging the adult Officer Lopez was at least two-feet taller than Estep and weighed,

at least, 120 pounds more), or anyone else.  See Clark, 2025 WL at *9 (affirming a jury's finding

that an officer used excessive force after the victim "only argued with [the officer] and used

expletives but did not threaten [the officer] or anyone else" at the scene).  Additionally, the

defendants do not argue that Officer Lopez had reason to believe that Estep was armed or that he

otherwise posed any threat at all to the safety of anyone in the vicinity.  See generally Defs.'

Mem.

       The third Graham factor, "whether [Estep] [wa]s actively resisting arrest or attempting to

evade arrest by flight[,]" Graham, 490 U.S. at 396, arguably supports Officer Lopez's pursuit of

Estep, but does not excuse Officer Lopez from having allegedly roughly horse-collared and

caused the small in size, nine-year-old boy to fall to the pavement, in light of the fact that he had

no reasonable belief that Estep had committed a crime or posed a danger to anyone.

Accordingly, the Court finds that the plaintiff has adequately alleged that Officer Lopez used an

unreasonable amount of force that violated Estep's Fourth Amendment right to be free from

excessive force.

       Having found that the plaintiff has adequately pleaded that the force used by Officer

Lopez was not reasonable, the remaining question as to Officer Lopez is whether he is shielded

from liability for his actions by qualified immunity, which as explained earlier, is dependent on

whether the right that was allegedly violated was or was not "'clearly established' at the time of

[his] alleged misconduct."  Pearson, 555 U.S. at 232.  The plaintiff contends that it was clearly

established that the force employed by Officer Lopez was "excessive '[because] it further[ed] no

governmental interest, such as apprehending a suspect or protecting an officer or the public.'"

Pl.'s Opp'n at 22 (quoting Johnson, 528 F.3d at 969).  Specifically, the plaintiff asserts that "[n]o

reasonable officer could think that his conduct [in this situation] was justified or reasonable

against a nine-year old child whose only wrongdoing was a verbal remark[,]" id., and further emphasizes that Estep "had done nothing more than lean against a car, utter a disrespectful remark, and run away." Id. at 24.

In response, the defendants allege that the plaintiff engages in a "mischaracterization of the facts made possible by an ambiguously phrased complaint[,]" Defs.' Reply at 6, wherein she claims that the clearly established right that was allegedly violated here was the prolonging of Estep's detention in handcuffs after he was fully under the defendant's control. Id. However, the impermissibly excessive force alleged by the plaintiff was not only the force allegedly used after Estep was handcuffed, but also the force allegedly used to subdue Estep by "grabb[ing] the back of [his] jacket and jerk[ing] him backwards, horse-collaring [him] and causing him to fall to the pavement." Compl. ¶ 15. Moreover, the Complaint alleges that, after detaining Estep, Officer Lopez "held [Estep] roughly by his arm[,]" id., and that he "pulled [Estep's] hands behind his back and handcuffed him[,]" id. ¶ 16. Collectively, the allegations regarding Officer Lopez adequately allege that the force he employed was unreasonable because it did not "further[] [any legitimate] governmental interest, such as apprehending a suspect or protecting an officer or the public." Johnson, 528 F.3d at 976. Therefore, the Court concludes that the plaintiff has adequately alleged that Officer Lopez employed excessive force against Estep.

Finally, the Court concludes that the plaintiff has stated an excessive force claim against Officer Flete-Sosa based on bystander liability. As the plaintiff alleges, see Compl. ¶ 66, Officer Flete-Sosa was present for the duration of the encounter and therefore should have intervened as Officer Lopez was infringing Estep's clear constitutional right against the use of excessive force during and following his apprehension. The defendants argue that "Officer Flete-Sosa [did not] have a reasonable opportunity to prevent [the alleged constitutional violation]." Defs.' Reply at

14.  However, nothing precluded Officer Flete-Sosa from taking some action to mitigate the harm once Officer Lopez apprehended Estep and tackled him to the ground for what the plaintiff alleges was not an insignificant period of time, see Compl. ¶ 19 ("Defendant [Officer] Lopez repeatedly and forcefully pulled [Estep] upright or closer to him several times."); id. ¶ 22 ("[Estep] was detained in handcuffs for an extended period of time, with all four [i]ndividual [officer d]efendants surrounding him.").  Indeed, rather than intervening in what was already a clear constitutional violation, Officer Flete-Sosa allegedly exacerbated the situation when he "repeatedly nudged [Estep] along with his hand[,]" id. ¶ 15, "interrogated [Estep] for his mother's name . . . [,] stood guard while [Estep] was detained . . . [and did not otherwise] act to challenge, question, or stop [d]efendant [Officer] Lopez's actions."  Id. ¶ 66.  While the Court appreciates that Officer Flete-Sosa was faced with a "quickly developing situation[,]" Malhoyt, 830 F.2d at 261, at this stage of the case, the plaintiff has adequately alleged that Officer Flete-Sosa did have a reasonable opportunity to intervene as Estep was detained, but Officer Flete-Sosa chose not to do so.  See Fernandors, 382 F. Supp. 2d at 72.

Moreover, for similar reasons that Officer Flete-Sosa is not shielded by qualified immunity from the plaintiff's unreasonable seizure claim, he is also not shielded by qualified immunity as a bystander from the plaintiff's excessive force claim.  As stated above, the plaintif has clearly alleged that Officer Lopez was using more force than was necessary under the circumstances when he "grabb[ed] the back of [Estep's] jacket, horse-collar[ed] him, forc[ed] [ ] him to the ground, pull[ed] him up [ ] by the arm, . . . handcuffed [him] tightly, . . . and repeatedly dragged [him] upright while [he] was handcuffed, injuring [his] arm."  Compl. ¶ 65.  The record supports the claim that Officer Flete-Sosa knew that there was no basis to assert that amount of force against Estep considering his age, size, the absence of a crime being committed,

and the lack of threat Estep posed to the officers or others, but did nothing to intervene to stop it. Therefore, the Court cannot find that Officer Flete-Sosa's actions, and his lack of actions, grant him the protection of qualified immunity.

Accordingly, the plaintiff has sufficiently stated a claim that Officer Flete-Sosa also violated Estep's Fourth Amendment right to be free from excessive force, and the Court must therefore deny the motion to dismiss Count II of the Complaint as to both Officers Lopez and Flete-Sosa.

### b. Whether the Plaintiff Has Adequately Alleged That Officers Matory and Styles Violated Estep's Fourth Amendment Right Against Excessive Force

The plaintiff next contends that Officers Matory and Styles are also liable under § 1983 for the excessive force employed by Officer Lopez pursuant to the doctrine of bystander liability, see Compl. ¶ 70 (alleging that the officers "are jointly and severally liable as bystanders to [d]efendant [Officer] Lopez's violation of [Estep's] Fourth Amendment rights, having knowledge of the excessive use of force, reasonable opportunity to prevent the violation, and making no effort to do so"). See also supra n.2. The defendants respond that the plaintiff has not pled facts that "demonstrate [Officers Matory and Styles] had knowledge that [] Estep's constitutional rights were being violated." Defs.' Mem. at 18. Additionally, the defendants contend that the plaintiff is essentially "demand[ing] [that] police immediately interrogate their fellow officers and witnesses upon arrival at a scene—with no consideration given as to how many other officers are actively involved in resolving the situation." Id. at 19.

As an initial matter, the plaintiff does not clearly argue that Officers Matory or Styles can be held directly liable for the use of excessive force against Estep. See Compl. ¶ 67 ("Defendants Matory and Styles . . . participated directly in the use of excessive force by acting

to prolong [Estep]'s detainment in handcuffs.").  Therefore, due to the absence of excessive

contact by these two defendants against Estep, the Court must once again determine whether the

plaintiff has stated a claim of bystander liability against these defendants, which as noted earlier,

see supra, Section III.A.1.b, requires that the defendants know of the violation, have an

opportunity to prevent the violation, but fail to act.  See Fernandors, 382 F. Supp. 2d at 72.

Officer Matory and Styles, having allegedly arrived after the tackling and handcuffing

had already occurred, see Compl. ¶ 22, had no reasonable opportunity to know what level of

force had been used in the first place, why it had been employed, or the opportunity to prevent its

use.  Additionally, because the two officers did not know that an allegedly unreasonable amount

of force was used at the outset of Estep's detention, they could not have known that Estep was

allegedly detained for longer than necessary in order for their fellow officers to complete their

investigation before releasing Estep.  Therefore, as pleaded, Officers Matory and Styles cannot

be found liable for violating Estep's right to be free from excessive force under the Fourth

Amendment, and the Court must grant the defendants' motion to dismiss Count II as to Officers

Matory and Styles.

## B.    The Plaintiff's <u>Monell</u> Claim Against the District (Count III)

The Court next turns to the plaintiff's Monell claim against the District of Columbia.

"Local governing bodies . . . can be sued directly under § 1983 for . . . relief where . . . the action

that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by the body's officers."  Monell, 436

U.S. at 690–91.  However, the governmental "custom" or "policy" need not be formally

approved by the relevant government.  Id.  "To state a Monell claim under § 1983, a plaintiff

must allege (1) a constitutional violation, and (2) that a custom or policy caused the

violation." Wheeler v. Am. Univ., 619 F. Supp. 3d 1, 34 (D.D.C. 2022). "Monell's requirement

of a causal link [between the alleged violation and the custom or policy] distinguishes municipal

liability under § 1983 from general tort-law principles of respondeat superior, which impose[s]

liability 'solely on the basis of the existence of an employer-employee relationship with a

tortfeasor.'" Robinson, 130 F. Supp. 3d at 194 (quoting Monell, 436 U.S. at 692).

As the Court has already concluded, the plaintiff has plausibly alleged that Estep's

constitutional rights were violated, see supra, Section III.A, thus satisfying the first prong of a

Monell claim. However, the plaintiff must also plausibly allege a causal link between an explicit

or implicit government policy and the alleged violation of Estep's constitutional rights. The

plaintiff alleges three separate theories in support of her custom and causation position: (1) that

"the practice by MPD officers of unlawfully detaining and/or handcuffing children during the

relevant time period was so widespread that it had become 'custom'; (2) that the District "fail[ed]

to timely enact policy changes [to address the practice] despite having knowledge of the problem

[which] amounted to deliberate indifference; and (3) that "the District was deliberately

indifferent by virtue of its failure to adequately train or supervise its officers" in regards to the

conduct at issue in this case. Pl.'s Opp'n at 33–34 (citing Compl. ¶ 37–46, 73–76).

Regarding the plaintiff's first theory—that the practice of unlawfully detaining and/or

handcuffing children was so widespread it had become a custom—the plaintiff cites: (1) six

incidents in which minors were handcuffed; (2) fifteen to twenty incidents in which minors were

detained for almost an hour; and (3) statements by District public officials regarding incidents in

which young boys were handcuffed or otherwise detained by police, including one by former

Attorney General Karl Racine who stated that the handcuffing of a "completely innocent" child

was "in accordance with MPD policies and procedures." Compl. ¶¶ 38–44. The plaintiff also

references an official MPD policy adopted after the encounter with Estep that advised MPD officers not to arrest children under twelve-years-old unless they present a danger to themselves or others.  See id. ¶ 47.

In response to the plaintiff's allegations, the defendants argue that "[b]ecause [the p]laintiff has not identified any policy in effect at the time of the alleged violation, Monell liability is unsupported."  Defs.' Mem. at 21.  Additionally, the defendants note the "[p]laintiff makes no allegations regarding official MPD policy, or any facts from which it could be reasonably inferred that the District has adopted such an official custom or policy that required the handcuffing of [] Estep under the circumstances presented."  Id. (emphasis added).  However, that is not required.  Rather, the plaintiff must merely allege that even though the custom or policy had "not received formal approval through the government's official decision-making channels[,]" Monell, 436 U.S. at 690, the handcuffing of children was still widespread enough to be considered the "moving force[,]" id. at 694, that caused the alleged violation at issue here.

Therefore, considering the number of such incidents alleged by the plaintiff during the same time period, the comments made by District officials regarding similar incidents, and the official MPD policy adopted after Estep's incident—which could reasonably be inferred as proof that MPD officials concluded that a policy change was needed based on the prevalence of child detention and/or handcuffing by its officers—the plaintiff has plausibly stated a claim for the District's Monell liability under § 1983.  Accordingly, the Court denies the defendants' motion to dismiss Count III as to the District.[4]

---

[4] Because the Court concludes that the plaintiff has sufficiently stated a Monell claim based on this first theory, the Court need not address the other theories the plaintiff alleges in pleading her Monell claim.  See Compl. ¶¶ 74–75 (contending that the District failed to "adequately train its officers about how to appropriately interact with District youth" and "fail[ed] to adequately supervise its officers about their interactions with District youth").

**C.      Common Law Tort Claims**

**1.      Whether the Court Should Exercise Supplemental Jurisdiction Over the Claims Against Officers Matory and Styles and Assess Whether They Survive the Motion to Dismiss**

As an initial matter, having granted the motion to dismiss the constitutional claims against Officers Matory and Styles, the Court first considers whether to exercise supplemental jurisdiction over the remaining common law claims against these officers.  See Compl. ¶¶ 80, 86. Under 28 U.S.C. § 1367(a), the Court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  However, courts may decline to exercise supplemental jurisdiction over state law claims if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the [ ] court has original jurisdiction, (3) the [ ] court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Id. §§ 1367(c)(1)–(4).

"A [] court may choose to retain jurisdiction over, or dismiss, [the remaining] pendent state law claims after federal claims are dismissed[,]" Shekoyan v. Sibley Int'l, 409 F.3d 414, 423 (D.C. Cir. 2005), a decision that is "left to the sound discretion of the [] [C]ourt." Edmonson & Gallagher v. Alban Towers Tenants Ass'n, 48 F.3d 1260, 1265–66 (D.C. Cir. 1995).  "[C]ourts in this jurisdiction routinely decline to exercise supplemental jurisdiction over pendent common law claims after dismissing the § 1983 claims over which they possess original jurisdiction."  Buie v. District of Columbia, No. 16-cv-1920, 2021 WL 4061142, at *21 (D.D.C.

Sept. 7, 2021).  "In deciding whether to exercise supplemental jurisdiction, the '[C]ourt must first determine whether the state and federal claims derive from a common nucleus of operative fact.'"  Armbruster v. Frost, 962 F. Supp. 2d 105, 116 (D.D.C. 2013) (quoting Konah v. District of Columbia, 815 F. Supp. 2d 61, 78 (D.D.C. 2011)).  "[I]n the usual case in which all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

Although the constitutional claims against Officers Matory and Styles have been dismissed, the Court will nonetheless exercise supplemental jurisdiction over the remaining state law claims against these officers because the "state and federal claims derive from a common nucleus of operative fact."  Armbruster, 962 F. Supp. 2d at 115.  Additionally, "judicial economy, convenience, [and] fairness," Carnegie-Mellon Univ., 484 U.S. at 350 n.7, weigh in favor of the Court exercising supplemental jurisdiction over the common law claims in order to avoid piecemeal litigation of these claims before another court that arose out of the same event at issue in this case.  Moreover, the Court is mindful that the battery claim against Officers Matory and Styles is "similar to the excessive force standard applied in the Section 1983 context."  Dormu v. District of Columbia, 795 F. Supp. 2d 7, 28 (D.D.C. 2011).  And, although the plaintiff's false arrest claim requires a separate analysis, the balance of factors—certainly judicial economy and convenience—counsel in favor of the Court exercising supplemental jurisdiction over this claim as well.  Therefore, the Court deems it appropriate to exercises supplemental jurisdiction over the state law claims alleged against Officers Matory and Styles.

## 2.  Battery (Count V)

An individual who has been injured by an MPD officer may pursue the common law tort of battery.  See, e.g., Holder v. District of Columbia, 700 A.2d 738, 741 (D.C. 1997).  To establish liability based on this tort, a plaintiff must prove that an officer committed an "intentional act that causes harmful or offensive bodily contact."  Id.  "Strictly speaking, a police officer effecting an arrest commits a battery."  Jackson, 327 F. Supp. 3d at 68.  But, "[i]f the officer does not use force beyond that which the officer reasonably believes is necessary, given the conditions apparent to the officer at the time of the arrest, he is clothed with privilege."  Id.

Where, as here, the elements of battery are clearly alleged based on Officer Lopez's conduct, see Compl. ¶ 15, the survivability of the battery claim is contingent on the applicability of the privilege defense.  In order to prove a defense of privilege, a government actor must show that "(1) he or she believed, in good faith, that his or her conduct was lawful, and (2) this belief was reasonable."  Doe v. District of Columbia, 796 F.3d 96, 107 (D.C. Cir. 2015) (citing Bradshaw v. District of Columbia, 43 A.3d 318, 323 (D.C. 2012)).  Specifically, "[a] police officer has a qualified privilege to use reasonable force to effect an arrest, provided that the means employed are not 'in excess of those which the actor reasonably believes to be necessary.'"  Holder, 700 A.2d at 741 (quoting Etheredge v. District of Columbia, 635 A.2d 908, 916 (D.C. 1993)).  "The reasonableness of a particular act of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20[–]20 vision of hindsight."  Etheredge, 635 A.2d at 916 (quoting Graham v. Connor, 490 U.S. 386, 396–97 (1989)).

The individual defendants assert that they are shielded by their privilege against a claim of alleged battery.  The Court will assess each defendants' liability with respect to the tort claims individually.

### a. Officer Lopez

In order to assess Officer Lopez's asserted privilege defense, see Defs.' Mem. at 14, the Court must determine whether the plaintiff has adequately pleaded that Officer Lopez acted unreasonably. See Doe, 796 F.3d at 107. As the defendants correctly argue, determining whether Officer Lopez is entitled to qualified privilege requires an analysis "similar to the excessive force standard applied in the [§] 1983 context." Defs.' Mem. at 15 (quoting Dormu, 795 F. Supp. 2d at 27). Because the Court has determined that the plaintiff has alleged that the violent manner in which Officer Lopez stopped and then handcuffed Estep was unreasonable and excessive—especially given Estep's youth, the physical size difference between Officer Lopez and Estep, and Officer Lopez's lack of reasonable suspicion for even pursuing and detaining Estep—the Court also holds that the plaintiff has sufficiently stated a claim that Officer Lopez acted unreasonably and is not shielded by the privilege defense. Therefore, the Court finds that Count V of the Complaint as applied to Officer Lopez survives the motion to dismiss.

### b. Officers Flete-Sosa, Matory and Styles

The Court next considers whether Officers Flete-Sosa, Matory and Styles may be held "jointly and severally liable for the common law tort of battery, having actively participated in the contact with" Estep, as alleged by the plaintiff. Id. ¶ 87. To reiterate, the essence of a claim for battery is "harmful or offensive bodily contact" against another person, Holder, 700 A.2d at 741, and the only contact alleged by the plaintiff as to any of these three officers was by Officer Flete-Sosa, who "followed closely" behind Officer Lopez as Officer Lopez "held [Estep] roughly by his arm[,] [ ] dragged him to the sidewalk, . . . and [Officer Flete-Sosa] repeatedly nudged [Estep] along with his hand[,]" Compl. ¶ 15. This is hardly enough alone to constitute a battery by Officer Flete-Sosa.

Nonetheless, the plaintiff maintains that Officers Flete-Sosa, Matory and Styles are liable "[i]n the alternative" "because [(1) these three officers] had a special relationship with [Estep] and failed to honor their duty to protect him"; or (2) they "are liable as bystanders to [Officer] Lopez's common law tort of battery, having knowledge of the battery, reasonable opportunity to prevent it, and making no effort to do so." Id. For several reasons the Court rejects the plaintiff's arguments.

First, the plaintiff's reliance on bystander liability battery is misplaced. "To hold one defendant liable for a battery committed by another, the plaintiff must show some basis for vicarious liability under the common law, such as aiding and abetting or conspiracy." Jackson, 327 F. Supp. 3d at 68; see Rawlings v. District of Columbia, 820 F. Supp. 2d 92, 107–08 (D.D.C 2011) (explaining that the defendant's "presence at the [police-involved] shooting, without more, cannot render him liable for assault and battery"). Typically, a plaintiff in a § 1983 excessive force case would plead a negligence claim for the actions of officers not directly engaged in the force employed, and the plaintiff here concedes that she did not distinctly plead a negligence claim but would do so if ordered by the Court. See Pl.'s Opp'n at 27 n.6 ("To the extent the Court determines this alternative theory is more appropriately pled as a standalone negligence claim and finds the Complaint must plead that count separately to put [the d]efendants on sufficient notice, [the p]laintiff [ ] requests leave to do so."). But, the plaintiff having failed to file a motion to amend her Complaint, and it being "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss[,]" McManus v. District of Columbia, 530 F. Supp. 2d 46, 74 n.25 (D.D.C. 2007), the speculative potential that the Court would allow her to do so has no bearing on whether the motion to dismiss should be granted. Thus, as currently alleged, the plaintiff's Complaint fails to state a claim for battery against Officers

Flete-Sosa, Matory and Styles under this alternative theory of liability because the mere presence

of these officers and the negligible touching of Estep by Officer Flete-Sosa are not sufficient to

sustain a battery claim against them for the actions employed by Officer Lopez against Estep.

See Rawlings, 820 F. Supp. 2d at 107–08.

Regarding whether the officers had a special relationship with Estep that would support a

battery claim against these three officers, that theory equally fails.  The plaintiff alleges that

Officers Flete-Sosa, Matory, and Styles had a special relationship with Estep because Estep "was

subjected to the battery while he was in police custody and reliant on police protection[,]" Compl.

¶ 87, and therefore these officers owed Estep a duty of care to intervene and stop Officer Lopez's

actions, which they failed to do.  See Pl.'s Opp'n at 27 (citing Malhoyt, 830 F.2d at 259).

Although there are instances where police officers might owe a duty of care to individuals, see

Morgan v. District of Columbia, 468 A.2d 1306, 1312 (D.C. 1983) (explaining that courts have

found that officers may "owe[] a special duty to use reasonable care for the protection of persons

who have collaborated with [them] in the arrest or prosecution of criminals"), such is not the

case here.  In this case, the plaintiff alleges the intentional tort of battery, but the plaintiff has not

distinctly pleaded that Officers Flete-Sosa, Matory, and Styles "w[ere] also breaching another

recognized duty,[—such as negligence—], owed to [Estep,]" Stewart-Veal v. District of

Columbia, 896 A.2d 232, 235 (D.C. 2006); see Dormu,795 F. Supp. 2d at 30 (explaining in

relevant part that a negligence claim must be "distinctly pled" when brought in conjunction with

a battery claim based on excessive force).  Indeed, "[a]dding the word 'duty' and reiterating the

allegations of intentional conduct" are "insufficient to plead negligence based claims"; Hunter v.

District of Columbia, 824 F. Supp. 2d 125, 139–40 (D.D.C. 2011), as the plaintiff attempts to do

here.  Thus, "any negligence claim must be based on facts that are different from the alleged

excessive force," and "must also arise from the breach of a standard of care that is different and distinct from the alleged excessive force." Lucas v. District of Columbia, 505 F. Supp. 2d 122, 126 (D.D.C. 2007).

Because the plaintiff has failed to plead facts that are distinct from the excessive force claims employed against Officer Lopez, the Court concludes that Officers Flete-Sosa, Matory, and Styles cannot be held liable for battery against Estep under any of the theories the plaintiff advances. And, because the Court concludes there is no underlying liability for battery against Officers Flete-Sosa, Matory, or Styles, joint and several liability does not attach. See supra n.3. Accordingly, the Court will dismiss Count V as to Officers Flete-Sosa, Matory, and Styles.

### 3. False Arrest (Count IV)

The Court next addresses whether the plaintiff has adequately stated a claim for false arrest against the individual defendants. The common law tort of false arrest is "indistinguishable as a practical matter from the common law tort of 'false imprisonment,'" because the "gravamen of a complaint for false arrest or false imprisonment is an unlawful detention." Bradshaw, 43 A.3d at 322 n.7 (quoting Enders v. District of Columbia, 4 A.3d 457, 461 (D.C. 2010)); see also Rice v. District of Columbia, 774 F. Supp. 2d 18, 21 (D.D.C. 2011) (noting the "practically identical" analysis used for false arrest and false imprisonment). The "central issue" in evaluating claims for both false arrest and false imprisonment "is whether the arresting officer was justified in ordering the arrest of the plaintiff; if so, the conduct of the arresting officer is privileged and the action fails." Bradshaw, 43 A.3d at 323 (citing Scott v. District of Columbia, 493 A.2d 319, 321 (D.C. 1985)). "Put another way, an allegation that a plaintiff was arrested and imprisoned without process raises a presumption of unlawful restraint and shifts to defendant the burden of justifying the restraint as lawful." Clarke v. D.C., 311 A.2d 508, 511 (D.C. 1973).

### a.  Officer Lopez

The Court first considers the defendants' motion to dismiss Count IV against Officer Lopez.  The defendants argue that Officer Lopez is not liable for common law false arrest because his detention of Estep was reasonable, <u>see</u> Defs.' Mem. at 10, and he is shielded by qualified immunity.  <u>See id.</u> at 5.  In order to show that Officer Lopez was shielded by qualified immunity, the defendant must show "(1) that he . . . had probable cause . . . to make the arrest or[,]" <u>District of Columbia v. Murphy</u>, 631 A.2d 34, 36 (D.C. 1993), (2) that he . . . believed in good faith that his . . . conduct was lawful," <u>id.</u>, and (3) this belief was reasonable."  <u>Id.</u> (citation modified).

As previously discussed, the plaintiff has adequately pleaded that Officer Lopez's detention of Estep was not reasonable because he had no reasonable suspicion, let alone probable cause, to tackle, detain, and handcuff Estep for allegedly leaning on a parked car, making a rude comment to officers, and running away from them.  See <u>supra</u>, Section III.A.1.b; <u>see also</u> Compl. ¶ 15.  Considering the similarity between § 1983 and common law claims for false arrest, <u>see</u> <u>Bradshaw</u>, 43 A.3d at 322 n.7, the plaintiff has satisfied her burden as to Count IV against Officer Lopez by alleging facts that plausibly show that he unreasonably detained Estep without probable cause.  Accordingly, the defendants' motion to dismiss Count IV as to Officer Lopez is denied.

### b.  Officer Flete-Sosa

The plaintiff alleges that Officer Flete-Sosa is "jointly and severally liable for the common law tort of false arrest, having actively participated in the contact with [Estep]."  Compl. ¶ 81.  The defendants argue both that the detention was not unlawful, precluding a false arrest claim, <u>see</u> Defs.' Mem. at 10, and with respect to Officer Flete-Sosa, that the plaintiff "does not

plausibly allege that he jointly contributed to any false arrest, nor that he at any point detained []
Estep himself." Defs.' Reply at 13. However, the Court has already concluded that the plaintiff
has adequately alleged that the defendants lacked probable cause or even reasonable suspicion to
support their detention and arrest of nine-year-old Estep, thus rendering the detention and arrest
unlawful. See supra, Section III.A.1.b–c.

Further, the Court also finds that the plaintiff has plausibly stated a claim against Officer
Flete-Sosa for common law false arrest. Generally, if a court finds the existence of either a
viable constitutional or common law claim of false arrest, the other is often also established. See
District of Columbia v. Minor, 740 A.2d 523, 531 (D.C. 1999). Even though Officer Flete-Sosa
was not the officer who allegedly tackled, detained, and handcuffed Estep, he was allegedly
present at the inception of the encounter and therefore should have appreciated the absence of
any reason justifying Estep's unlawful detention. Moreover, despite the defendants' argument
that Officer Flete-Sosa cannot be held liable because he "'believed in good faith that the arrest
was lawful and that this belief was reasonable[,]'" Defs.' Mem. at 10 (quoting District of
Columbia v. Minor, 740 A.2d 523, 531 (D.C. 1999)), the Complaint is void of any facts that
would tend to show Officer Flete-Sosa held a reasonable belief that Estep's detention was lawful.
Thus, the Complaint adequately alleges that there was no sufficient basis to detain Estep, and the
defendants have not proved otherwise, see Minor, 740 A.2d at 531. Accordingly, the plaintiff
has sufficiently pleaded a claim for common law false arrest against Officer Flete-Sosa and the
defendants' motion to dismiss Count IV with respect to Officer Flete-Sosa is denied.

### c. Officers Matory and Styles

Finally, the Court considers whether Officers Matory and Styles may be held liable for
false arrest of Estep. Again, the Court's conclusion above, see supra, Section III.A.1.c., guides

its analysis here.  Because Officers Matory and Styles were allegedly not present at the outset of

the encounter with Estep, they had no opportunity to know that Estep had been unlawfully

detained.  Nonetheless, the plaintiff contends that they "played an active role in [Estep's]

detention[,] Pl.'s Opp'n at 17, because they "arrived [to the scene] while [Estep] was

handcuffed[,] . . . [and] affirmatively aided [Estep's] ongoing detention, [by] walling him off

from the growing crowd of bystanders demanding his release." Id.  Additionally, the plaintiff

contends that these officers "stood by as [Officer] Lopez mocked [Estep] for crying." Id.

Despite these allegations, the plaintiff does not allege that Officers Matory or Styles became

aware at some point before Estep's release that they heard Officer Lopez allegedly mock Estep

for crying, or knew the basis for Estep's detention.  See Scott, 101 F.3d at 755 (holding that

because several officers had "arrived on the scene after" the arresting officer had illegally

detained the plaintiff, they could not have known that a false arrest had occurred and be held

liable for it); see also id. ("Under these circumstances, the [officers] were entitled to conclude

that [the plaintiff] was not free to leave, and to use reasonable force to prevent his escape[.]").

Accordingly, the Court dismisses Count IV as to Officers Matory and Styles.

### 4.  Intentional Infliction of Emotional Distress ("IIED") (Count VI)[5]

Next, the Court considers whether Officer Lopez may be liable for IIED against Estep.[6]

First, the plaintiff argues that Officer Lopez "acted intentionally and recklessly" in regards to his

actions against Estep when Officer Lopez "chased [Estep] through traffic; continued to pursue

him as he cried, urinated on himself out of fear, and called out for his mother; detained

him . . . in handcuffs for an extended period of time; yelled at and demanded information of him

---

[5] The plaintiff numbers this Count as "Count IV" in her complaint, but it appears to the Court that this is actually Count VI.

[6] The plaintiff only asserts her IIED claim against Officer Lopez and against the District, based on vicarious liability. See Compl. ¶¶ 90–94.

while detained; and mocked him for his distress."  Compl. ¶ 92.  And, the plaintiff contends that

"[a]s a direct and proximate result of [Officer] Lopez's unlawful conduct, [Estep] suffered

injuries and other damages and loses . . . —including deprivation of his liberty, fear, anxiety,

humiliation and offense, and emotional distress—entitling [the] [p]laintiff to compensatory and

punitive damages[]" for IIED.  Id. at ¶ 93.  In response, the defendants argue that "Officer

Lopez's conduct was not so outrageous, extreme, atrocious, intolerable, nor beyond all possible

bounds of decency [to merit liability for IIED]."  Defs.' Mem. at 25.

      To prevail on an IIED claim under District of Columbia law, the plaintiff must show:  "(1)

extreme and outrageous conduct on the part of the defendants, which (2) intentionally or

recklessly (3) causes the plaintiff severe emotional distress."  Amobi v. D.C. Dep't of Corr., 755

F.3d 980, 995 (D.C. Cir. 2014) (quoting Futrell v. Dep't of Lab. Fed. Credit Union, 816 A.2d

793, 808 (D.C. 2003)); see also Cooke-Seals v. District of Columbia, 973 F. Supp. 184, 188

(D.D.C. 1997) (citing Jonathan Woodner Co. v. Breeden, 665 A.2d 929, 935 (D.C. 1995)).  As to

the first element, the D.C. Circuit has explained that the "conduct alleged must be 'so outrageous

in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be

regarded as atrocious, and utterly intolerable in a civilized community.'"  Amobi, 755 F.3d at

995 (quoting Bernstein v. Fernandez, 649 A.2d 1064, 1075 (D.C. 1991); see Baltimore v. District

of Columbia, 10 A.3d 1141, 1155 (D.C. 2011) (same).  The conduct must be such that "the

recitation of the facts to an average member of the community would arouse his [or her]

resentment against the actor, and lead him [or her] to exclaim, 'Outrageous!'" Restatement

(Second) of Torts § 46 cmt. d (Am. L. Inst. 1965).  "The 'extreme and outrageous' standard

for intentional infliction of emotional distress is different from, and more exacting than, the

'reasonableness' standard used for evaluating claims of excessive force."  Bushrod v. District of

Columbia, 521 F. Supp. 3d 1, 30 (D.D.C. 2021) (quoting Kotsch v. District of Columbia, 924

A.2d 1040, 1046 n.5 (D.C. 2007)).  Therefore, only a particularly egregious case of excessive

force "can constitute outrageous behavior such that it satisfies a claim of intentional infliction of

emotional distress."  Harris v. U.S. State Dep't of Veterans Affs., 776 F.3d 907, 917 (D.C. Cir.

2015); see also Jackson, 327 F. Supp. 3d at 70 ("Only a 'serious case of excessive force' can

amount to actionable 'outrageous behavior.' Something more than a run-of-the-mill excessive-

force claim is required.") (quoting Harris, 776 F.3d at 917).  The Court must therefore determine

whether Officer Lopez's conduct satisfies this standard and therefore merits maintaining a claim

of IIED against him.  If the Court finds that it does, the Court will next determine whether the

District may be also held vicariously liable for the actions of Officer Lopez.

        The Court concludes that at this stage of the case, the plaintiff has sufficiently pleaded an

IIED claim against Officer Lopez.  The facts alleged by the plaintiff plead conduct sufficiently

outrageous to support an IIED claim, even considering the stringent standard against which the

Court must evaluate Officer Lopez's conduct.  See Harris, 776 F.3d at 917.  The unreasonable

detention and excessive amount of force the plaintiff contends was exercised by Officer Lopez

when he chased, tackled, and handcuffed the young, small, and unimposing Estep, see Compl.

¶ 15, causing him to cry and "wet himself[,]" [7] id. ¶ 18, suffices as outrageous conduct.

Additionally, Officer Lopez is alleged to have "mocked [Estep] by telling him that he should not

be hanging out with older boys if he was going to 'cry as soon as [he] g[o]t caught" and "also

_____

[7]  The defendants contend that the plaintiff has "present[ed] the allegations in a list . . . to portray them as more
egregious," such as for example "mudd[ying] the timeline of" when Estep allegedly wet himself, see Defs.' Reply at
16.  However, it is clear from the plaintiff's Complaint that she has alleged that Estep wet himself while he was
allegedly unlawfully chased and detained by the officers, see Compl. ¶ 1 (alleging that "during" "the
[incident] . . . [Estep] . . . was so fearful that he wet himself"); id. ¶ 18 (Estep "was so fearful and distressed by the
officers' conduct that he wet himself during the [i]ncident").  Therefore, because the Court must consider the totality
of the events leading up to the unlawful seizure, i.e. Officer Lopez chasing Estep through traffic even as Estep "was
hysterical" and "fearful, id., as well as the seizure itself, it is sufficient for the plaintiff to have alleged that Estep wet
himself at some point during the duration of the encounter with Officer Lopez.

conveyed to [Estep] that if he was going to talk a big game, he should 'act it.'" Id. ¶ 24.  Further,

it is significant that the plaintiff asserts that these actions were taken against a child who was

only nine-years-old, weighed only seventy pounds and was only four feet tall.  Id. ¶ 1; see

Xingru Lin v. District of Columbia, 268 F. Supp. 3d 91, 103 (D.D.C. 2017) (denying motion to

dismiss an IIED claim where the plaintiff alleged that she was "pushed [] against a wall and then

onto the floor, [had her back] stepped on . . . , [had her arm] twisted" and was subsequently

arrested after initially being released when it was learned that she was going to file a complaint

against the officers based on the false claim that she had "'assaulted' them"); see also Jackson,

327 F. Supp. 3d at 58, 64–65, 70 (denying motion to dismiss where the plaintiff alleged that he

was beaten by several officers despite his efforts to comply with the officers' instructions, was

maced several times, and then handcuffed.).  On this record, the Court denies the motion to

dismiss Count VI as to Officer Lopez.

   **5.  Vicarious Liability of the District Under <u>Respondeat Superior</u> for the Common Law Tort Claims**

   "Under the doctrine of <u>respondeat superior</u>[,] the District of Columbia is liable for the

torts of its police officers acting under the scope of their employment."  <u>District of Columbia v.</u>

<u>White</u>, 442 A.2d 159, 162 n.7 (D.C. 1982) (emphasis added).  While "a municipality cannot be

held liable under § 1983 on a <u>respondeat superior</u> theory[,]" <u>Monell</u>, 436 U.S. at 691, courts must

distinguish between the constitutional claims and the common law tort claims because the

District "may be sued under the common law doctrine of <u>respondeat superior</u>[,]" <u>District of</u>

<u>Columbia v. Davis</u>, 386 A.2d 1195, 1202 (D.C. 1978).  Because the Court has concluded that the

plaintiff has stated a claim that Officer Lopez may be held liable for the common law torts of

false arrest, battery, and IIED, and that the plaintiff has stated a claim that Officer Flete-Sosa

may be held liable for false arrest, the plaintiff has also sufficiently alleged that the District may

be held liable based on respondeat superior because Officers Lopez and Flete-Sosa were "acting within the scope of their employment" when the encounter with Estep occurred. Compl ¶¶ 9–10. Accordingly, the Court denies the defendants' motion to dismiss the claims against the District arising from the tortious conduct of Officer Lopez and Officer Flete-Sosa.

## IV.    CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Specifically, the motion to dismiss the claims filed against Officer Lopez is denied as to all counts alleged against him. Additionally, the motion to dismiss Counts I, II, and IV is denied as to these claims filed against Officer Flete-Sosa, but the Court will grant the motion to dismiss Count V filed against Officer Flete-Sosa. Further, the Court grants the defendants' motion to dismiss all Counts alleged against Officers Matory and Styles. Lastly, the Court denies the defendants' motion to dismiss Counts III, IV, V, VI against the District.

**SO ORDERED** this 9th day of January, 2026.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.